(9 Misc. Rep. 20.)

### BABER v. BROADWAY & S. A. R. CO.

(Common Pleas of New York City and County, General Term. June 4, 1894.)

EVIDENCE—DECLARATIONS OUT OF COURT—CORROBORATION.

Declarations made by a witness out of court are admissible to corroborate his testimony on the trial where it is charged that the witness had a motive in testifying falsely, or to contradict evidence showing that his testimony was a recent fabrication.

Appeal from trial term.

Action by George Baber against the Broadway & Seventh Avenue Railroad Company for loss of services of plaintiff's son. From a judgment entered on a verdict in favor of plaintiff, and from an order denying a motion for a new trial, defendant appeals. Affirmed.

Argued before DALY, C. J., and BISCHOFF and GIEGERICH, JJ.

Lamb, Osborne & Petty (Robert D. Petty and Gilbert D. Lamb, of counsel), for appellant.

Root & Clarke, for respondent.

GIEGERICH, J. This action was brought by the plaintiff to recover damages for loss of the services of his son, alleged to have been sustained in consequence of the negligence of the servants of the defendant company. The answer was a general denial.

On the evening of April 9, 1891, George L. Baber, a son of the plaintiff, and who was then 11 years of age, was on Seventh avenue, near Twenty-Fourth street, selling newspapers. As a car of the defendant approached, a passenger on the front platform of the car beckoned to the boy to bring him a newspaper. The latter got upon the front platform after the car had come to a standstill, and sold a newspaper to the passenger in the presence of the driver. The boy, who was the only witness of the accident produced by the plaintiff, testified that, while he was occupied in making change, the car got under considerable headway, and, when near Twenty-Third street, he asked the driver to stop the car, which was going pretty fast at the time. The driver answered, "No; jump." The boy then repeated his request twice, and got the same answer, and then the

driver stooped down and picked up his whip, and the boy, believing that the driver was going to strike him with the whip, jumped off the car, fell, was run over, and his right arm was fractured and lacerated. That, after the accident, he was carried to the sidewalk, and from there taken by a policeman to a drug store. That he was then taken to the hospital in an ambulance, where he remained for seven weeks, during which time his mother visited him daily. On his cross-examination the boy denied having said, "I won't do it again," in the presence of the policeman and the conductor of the car, and further testified that he told the policeman who was taking care of him that he had asked the driver to stop, and that he would not stop for him. On his redirect examination the boy further testified that the policeman only asked him where he lived; that he recollected what he said to him; that the policeman asked him how he got hurt, and the boy told the officer that he had sold a newspaper to the passenger, and asked the driver to stop the car, the latter saying, "No; jump." Dr. John McGrath, a witness called by the plaintiff, testified that, at the time of the accident, he was a surgeon in the New York Hospital, to which the boy was brought in an ambulance; that, upon examination, he found the boy suffering from a compound fracture of the right arm at the point between the middle third and the upper third. The witness testified at length as to the nature of the injury and the course of treatment, and that the boy came to the hospital on April 9, 1891, and was discharged on May 27, 1891. Upon cross-examination the witness testified: "I am not prepared to say that the boy made a statement at the time he was taken to the hospital, on April 9th."

The defendant called as witnesses the persons named below, who severally testified, in substance, as follows: James Reynolds testified that he was the passenger who bought a newspaper from the plaintiff's son; that, after giving him the required change, the boy jumped off the car with his back towards the horses, and facing the car; that he did not hear the boy ask the driver to stop, and that the boy did not ask the driver to stop; that he did not hear the driver tell the boy to jump off, and that the former did not tell the latter to jump off; that the driver did not stoop down and pick up the whip to hit the boy; that, immediately on giving the witness his change, the boy got off the car. On cross-examination the witness denied having said to the plaintiff, the day after the accident, that if the driver had stopped, as the boy had asked him, he would not have been hurt. Joseph F. Wild testified that he was the conductor of the car in question, but was no longer in the defendant's employ. He gave the following version of the accident:

"We had just gone about thirty or forty feet below the lower crossing, when I saw a little boy on the front platform looking all around, and I got on the step to chase him off, as it is against the rules of the company to allow any boys on the front platform. I knew it was not a passenger, because it would have been higher standing on the step. He was on the step, turned well around, and taking hold with his right hand of the handle of the car on the dashboard, his back to the horses, and facing the car, and he got off backwards; and, as he got off, he fell, and the hind wheel struck him. He fell this way [indicating],—right out,—and it was his right hand that got hurt.

As soon as I saw that, I gave the danger signal for the car to stop, and it stopped about three feet afterwards. The car wasn't going very fast."

The witness further testified that, when the boy got off, he (the witness) was on the back platform; that he did not know whether there was any conversation between the driver and the boy, nor whether the driver chased the boy off or not. He also testified:

"I asked the boy, as I picked him up— As soon as I picked him up, he said: 'I won't do it any more.' He acted as if he was afraid, because, when I made a motion towards him to pick him up, the boy tried to get on his feet, and he said, 'Oh, mister, I won't do it any more.' "

Paul Rowitz testified that he was the driver of the car, but had severed his connection with the defendant nearly three years before; that he did not see the boy until the officer called his attention to the accident; and that he did not say nor do anything to cause him to jump off the car. Edward A. Collins testified that he was a police officer, and had charge of this case; that he did not see any part of the accident; that he asked the boy "how he came to get hurt,—was he pushed or shoved off the car,—and he said 'No'; that he fell." He further testified: "The boy didn't say to me that he asked the driver to stop and the driver told him to jump, nor anything like that, in substance. * * * The boy was suffering pain at that time." On cross-examination the witness testified, among other things: "I did not go to the hospital. I don't know what statement the boy made at the hospital." Police Officer Charles Baxter testified that, when the accident happened, he was standing on the southeast corner of Seventh avenue and Twenty-Third street; that he noticed the boy jump off the car; that he was on the opposite side of the car, and could not say whether the boy jumped backward or forward, nor what part of the car struck the boy; that he overheard the conversation between the other officer and the boy; that the former asked the latter how he got hurt, and the boy said he got hurt by jumping off the car. In rebuttal of this testimony the plaintiff recalled his son, who testified that he recollected the statement made by him at the hospital on the day of the accident; and then this question was put to him by plaintiff's counsel: "Won't you tell the jury what that statement was?" This was objected to by defendant's counsel as incompetent, immaterial, and irrelevant. The objection was overruled, and defendant's counsel excepted to the ruling. The witness answered to the same effect as upon his original examination, and counsel for the appellant insist that error is predicable of the admission of the evidence in question. The record shows that the learned trial judge admitted the evidence referred to, not as evidence of the facts of the accident, but for the purpose of rebutting the suggestion or intimation that might be raised by the testimony that the boy's story was a recent invention. Proof of declarations made by a witness out of court in corroboration of testimony given by him on the trial of a cause is, as a general and almost universal rule, inadmissible. To this rule, however, there seem to be exceptions, and that, under special circumstances, such proof will be received; as, where the witness is charged with giving his testimony under the influence of some

motive prompting him to make a false or colored statement, it may be shown that he made similar declarations at a time when the imputed motive did not exist. So, in contradiction of evidence tending to show that the account of the transaction given by the witness is a fabrication of late date, it may be shown that the same account was given by him before its ultimate effect and operation arising from a change of circumstances could have been foreseen. Robb v. Hackley, 23 Wend. 50; In re Hesdra's Will, 119 N. Y. 618, reported in full in 23 N. E. 555, and citations. In order to come within the above exceptions to the rule, it is not necessary, as contended by the appellant's counsel, that there be a direct charge of fabrication. It is sufficient if the impeaching evidence tends to show that the account of the transaction given by the witness is a recent fabrication or was prompted by corrupt motives (In re Hesdra's Will, supra; Herrick v. Smith, 13 Hun, 446); or where the object of the cross-examination is to show that the testimony of the witness is an afterthought and a subsequent invention (Gilbert v. Sage, 57 N. Y. 639, 640; Wray v. Fedderke, 43 N. Y. Super. Ct. Rep. 335, 340; Com. v. Wilson, 1 Gray, 337, 340). In the case before us it is apparent, from a careful reading of the proceedings and evidence, that the object of the question put on the cross-examination of the hospital surgeon with respect to any statement made by George L. Baber (the witness above referred to) when he was brought to the hospital, the cross-examination of the boy, and the defendant's direct examination of its witnesses, all had a tendency and were calculated to impeach the boy's testimony, and to stamp it as an afterthought and a fabrication of recent date; and under these circumstances, and within the authorities above cited, it was proper to show, in answer, that he had previously told the same story.

The appellant's counsel also claim that the trial judge did not throw around the testimony in question the proper safeguards; but the record shows that the learned trial judge expressly told the jury that the statement made by the witness was not in evidence; in other words, that it was not to be taken as evidence of the fact of the accident, but simply as evidence of the boy's consistency and truthfulness. This is in harmony with the design of the rule enunciated by the court in Herrick v. Smith, supra, which is to enable the witness to relieve himself from an apparently dishonest motive or imputation, in order that his testimony may not be unjustly criticised or discredited. (Brady, J.)

The record discloses that other exceptions were taken by the defendant at the trial, but they have not been relied upon on this appeal. At all events, we are satisfied, after a careful examination of the printed case on appeal, that the rulings of the trial judge were in all respects correct, and that, in view of the nature of the accident, the amount of damages awarded by the jury is not excessive. The judgment should therefore be affirmed, with costs. All concur.