[Crim. No. 5793.   In Bank.   Sept. 14, 1956.]

THE PEOPLE, Respondent, v. VINCENT RAYMOND WALSH et al., Appellants.

Robert M. Fisk, Richard P. B. Tyson, John J. Bradley and Max Solomon for Appellants.

Edmund G. Brown, Attorney General, Clarence A. Linn, Chief Assistant Attorney General, Raymond Momboisse and William E. James, Deputy Attorneys General, S. Ernest Roll, District Attorney (Los Angeles), and William E. McGinley, Deputy District Attorney, for Respondent.

SHENK, J.—This is an appeal by the defendants Vincent Raymond Walsh and Joseph M. Stewart from judgments of conviction on two violations of section 68 of the Penal Code and from orders denying their motions for a new trial. Section 68 provides in its pertinent part as follows: "Every . . .

employee . . . of the State of California, county or city therein . . . , who asks, receives, or agrees to receive, any bribe, upon any agreement or understanding that his . . . action upon any matter then pending, or which may be brought before him in his official capacity, shall be influenced thereby, is punishable by imprisonment in the State prison. . . .''

The defendants were employed by the city of Los Angeles as building inspectors. Their assignments were to ''spot check'' plastering jobs and to pass upon the quality of workmanship and compliance otherwise with the local plastering requirements. If an inspector finds that work does not conform to those requirements he has authority to order a work stoppage on the particular job pending its correction. After the defects in a rejected job have been corrected, he is supposed to approve it in writing by an endorsement on the prior stop order. The contractor has a right of appeal from a stop order through administrative channels but pending the appeal the job would remain at a standstill, or if completed the contractor could not obtain a certificate that the building was ready for occupancy.

The offenses were charged in two indictments, both of which applied to each defendant. The events resulting in the first charge began on February 5, 1954, when the defendants jointly inspected an apartment under construction in San Pedro. They assumed to decide that the plastering was unsatisfactory and mailed a copy of a job order to the general contractor which required that he: ''Remove non-conforming interior plaster or submit test holes of interior plaster at spots indicated by plastering inspector. Do not apply third exterior coat of plaster until inspected by—J. Stewart—V. Walsh.'' On March 3d it came to the defendants' attention that the order had not been complied with but that all of the plastering work had been completed. Walsh wrote out a duplicate order and arranged to meet Stubblefield, the plastering subcontractor, on the job, on March 5th. On that day the defendants and Stubblefield discussed the matter at the location of the job. Walsh stated to Stubblefield that he would require tests to be made at four different spots which would cost the subcontractor $60 per test, but that he ''heard that you were willing to fix the job up.'' Stubblefield asked if the price of one test would be sufficient. Walsh requested $125, stating that they had to pay off someone else and promised that if Stubblefield worked with them he could have a job fixed almost anywhere in the city. He threatened to make Stubblefield tear off all the plaster if he told anyone about the deal. Stewart

was present during this conversation and made no objection. Thereafter Stewart drove Walsh and Stubblefield to a bank in San Pedro. Stubblefield went in alone, made out and cashed a check drawn to cash in the sum of $125, then returned to the car and, in the presence of Stewart, handed Walsh the proceeds of the check. Stubblefield made no changes in the plaster work. Walsh endorsed the job order: "Cured O.K. 3-8-54 Walsh."

In the second indictment it was charged that another plastering subcontractor in Culver City was required to pay a bribe. After inspecting that job on March 10, 1954, Stewart told the general contractor that the plastering was not satisfactory, gave him his business card and requested that the plastering subcontractor get in touch with him. The general contractor telephoned the message to the Ace Building Materials Company, and a Mr. Hilty of that company telephoned Mrs. Griffin, the wife of the plastering subcontractor. Upon receipt of the message Griffin consulted Hilty and his partner and was told by them to "do like the rest of them do," to "square it" by paying the inspector, and to keep his mouth shut. They suggested $50 as a payment that would probably satisfy Stewart. Thereupon Griffin telephoned the district attorney's office and reported the incident. He was told to "stall" the inspectors as much as he could so that the department could go to work on the matter, and if unsuccessful in obtaining a delay to use his own judgment and to advise what happened. Griffin telephoned Stewart at his home and arranged to meet him or one of his associates on the job the next morning. On that day Walsh instead of Stewart appeared and told Griffin that the plastering must be rejected, that "these jobs are usually taken care of" and asked "could you stand $50.00?" When asked why so much was demanded Walsh replied that there was someone else who had to be taken care of and stated, after receiving the money, "Well, this should handle you for a while to come." Griffin paid Walsh with the proceeds of a check for $50 which he had cashed for that specific purpose while en route to the appointment.

Immediately after paying Walsh, Griffin reported to the district attorney's office. The following day Griffin was interrogated by officials of the City Building Department with regard to the incident. Several days later Griffin telephoned Walsh and asked why the job had not been approved. Walsh said, "You know why, you s—— of a b———," and hung

up. The job had not been approved prior to trial but there was evidence that it had withstood laboratory tests.

The defendants pleaded not guilty to both indictments. Over their objection the cases were consolidated for trial. Separate appeals were taken from the judgments and from the orders denying the motions for a new trial.

■ It is contended that the court erred in admitting in evidence the $125 check cashed by Stubblefield on March 5, 1954, and the $50 check cashed by Griffin on March 11, 1954, on the ground that the checks were incompetent, irrelevant, immaterial and self-serving. However, those checks were competent evidence to prove that the witnesses had such sums in their possession at the time of the alleged bribes and otherwise to corroborate their account of events which they testified took place. There was evidence that the proceeds of the checks in question found their way into the defendants' possession. The testimony connecting the checks with the defendants and the transactions involved was not remote or speculative (*cf. People* v. *Bissert,* 71 App.Div. 118 [75 N.Y.S. 630]) but was direct, positive and substantial. (*People* v. *Vollmann,* 73 Cal.App.2d 769, 792 [167 P.2d 545]; *People* v. *Graves,* 137 Cal.App. 1, 11 [29 P.2d 807, 30 P.2d 508]; *Taylor* v. *State,* 44 Ga.App. 387 [161 S.E. 793, 801]; *State* v. *Emmanuel,* 42 Wn.2d 799 [259 P.2d 845].) There was no error in admitting the checks.

The defendants next urge that the court committed prejudicial error in admitting certain evidence claimed to be self-serving and hearsay. The contention arises out of attempts by the prosecution to rehabilitate their witnesses Stubblefield and Griffin. On cross-examination of these witnesses the defendants attempted to show that their testimony might have been fabricated and that they might have been biased and prejudiced towards the defendants. On redirect examination of the witness Stubblefield, the prosecution was allowed, over objection, to introduce certain prior consistent statements of the witness for rehabilitating his testimony. The court at that time instructed the jury that the evidence was being admitted not to prove the truth of the statements but for the limited purpose of refuting any suggestions or inferences that the witness had "fabricated" his testimony at the trial or that his testimony had been actuated by bias or ulterior motives. The rehabilitating evidence showed that Stubblefield had placed an endorsement on the back of the $125 check before he cashed it, reading "paid Vince Walsh

$125.00 for fixing job 38 & Pacific, San Pedro job.'' Also evidence was introduced to the effect that Stubblefield had, on a prior occasion, told his general contractor that he had paid the inspector $125 to clear the job.

Likewise there was an attempt on cross-examination to impeach the testimony of the prosecution's witness Griffin and to show a recent fabrication on his part. As rehabilitating evidence, after such cross-examination, the prosecution introduced a check stub made out by Griffin at the time he wrote the $50 check with the notation thereon ''L. A. City Inst. Pay-off $50.00,'' and he was allowed to explain that ''Inst.'' meant ''Inspector.'' Also, a store clerk who had cashed the check testified that Griffin had remarked at the time that it was for the purpose of a pay-off. Again, the jury was admonished by the court that this evidence was admitted for the limited purpose of ''refuting the suggestions or inferences, if any, that this witness had beforehand or at the trial fabricated his testimony, or that his testimony was actuated by bias or ulterior motives, and it is introduced and received into evidence to prove the state of mind of this witness on a date prior to this trial for the purpose of determining whether his state of mind at that time was the same as disclosed at this trial, and to prove that his testimony at this trial was not a fabrication.''

At the conclusion of the trial the court instructed the jury again as to the limited purposes for which rehabilitating evidence had been admitted, using substantially the same language as above set forth and as approved in *People* v. *Weatherford,* 78 Cal.App.2d 669, 697 [178 P.2d 816].

■ It is the rule generally and in this state that where the opposition has assailed the testimony of a witness as being of recent fabrication, an exception to the hearsay rule allows the admission of evidence of statements or conduct prior to the claimed fabrication and consistent with the testimony of the witness at the trial, ''not to prove the facts of the case, but as tending to show that the witness has not been controlled by motives of interest and that he has not fabricated something for the purpose of the case.'' *(People* v. *Kynette,* 15 Cal.2d 731, 753-754 [104 P.2d 794]; see also *Sweazey* v. *Valley Transport, Inc.,* 6 Wn.2d 324 [106 P.2d 567, 111 P.2d 1010, 140 A.L.R. 1]; 140 A.L.R. 93.)

The defendants contend that the court improperly applied the ''prior consistent statement'' rule; that an express limitation upon the use of this exception to the hearsay rule

is that such prior remarks must have been made "prior to the time when the motive of interest existed" *(People* v. *Kynette, supra,* 15 Cal.2d 731, 754; *Mason* v. *Vestal,* 88 Cal. 396, 398 [26 P. 213, 22 Am.St.Rep. 310] ; *Barkly* v. *Copeland,* 74 Cal. 1, 5 [15 P. 307, 5 Am.St.Rep. 413]); that it is evident that these witnesses were as much biased and prejudiced at the time they made the prior statements as they were during the trial, and that the jury was confused and misled by the instructions of the court that the evidence was admissible to refute inferences that the witnesses had "at this trial" fabricated their testimony or that "at this trial" their testimony was actuated by bias or ulterior motives.

There is no question but that on cross-examination the defense endeavored to bring out that the witness Griffin and Stubblefield were motivated by personal interests, were biased and had fabricated their testimony at least in part. It may be assumed that the witnesses' bias and prejudice against the defendants originated at the time of or prior to the time they were forced to pay the bribes. But in addition to showing such bias and prejudice the cross-examination pursued by the defense was designed to create inferences of fabrication which originated after the time of the bribes and after the making of the writings and statements claimed to have been improperly admitted for the purpose of rehabilitation. Thus the witness Stubblefield was questioned at length as to whether he presently disliked the defendant Stewart; whether he had testified differently before the grand jury; whether it was not now his purpose to "get even" for having been forced to pay the bribes; whether he and the witness Griffin had not discussed the testimony they would give at the trial after appearing before the grand jury and since the trial began; whether the $125 check he cashed immediately before paying the bribes was signed in the manner it normally would have been if actually drawn and cashed at the time he claimed, and whether the whole transaction actually ever took place. In the case of the witness Griffin, he was interrogated on cross-examination as to his associations and discussions with Stubblefield and a police lieutenant for the purpose of creating an inference that his testimony was influenced by such discussions. In another instance a conflict had arisen as to the manner in which Stewart first met Griffin in connection with the matter. A slip of paper was offered in evidence containing the notation of a message purportedly given by Hilty to Mrs. Griffin over the telephone and asking

that Griffin call Stewart. The paper contained, among other things, the notation "Wa. 4287." Stewart's residence telephone number was WAlnut 4287. Griffin testified that he had called that number and talked to someone who had identified himself as Stewart, with regard to the job order. On cross-examination Griffin was asked whether he had inserted the number on the paper "since the trial began," and whether he ever actually gave Walsh the proceeds of the $50 check or any currency at all.

█ With reference to the questioned rulings and instructions it is to be noted that it is not necessary that the party desiring to impeach should expressly state that he seeks to prove a fabrication of recent date. It is sufficient if the record indicates a purpose to prove a recent fabrication. (*Davis* v. *Tanner*, 88 Cal.App. 67, 78-79 [262 P. 1106]; *Griffin* v. *Boston*, 188 Mass. 475 [74 N.E. 687]; *Baker* v. *Broadway & S.A.R. Co.*, 9 Misc. 20 [29 N.Y.S. 40]; *Sweazey* v. *Valley Transport, Inc.*, *supra*, 6 Wn.2d 324 [106 P.2d 567, 111 P.2d 1010, 140 A.L.R. 1]; 140 A.L.R. 152 and cases collected at pp. 153-154.) █ In the present case inferences of fabrication since the alleged bribes could be fairly drawn by the jurors in addition to those which would tend merely to impeach the witnesses' general reputations or otherwise cast doubt upon their testimony. We find no error in admitting evidence of prior consistent statements for the limited purpose of refuting inferences of subsequent fabrication and to show a prior state of mind consistent with that shown by the witnesses when testifying. However, if there was any error in ruling on the admissibility of the evidence a review of the record discloses no miscarriage of justice resulting therefrom.

█ Error is asserted because of the refusal of the court to admit evidence to rehabilitate defense witness Hilty. The cross-examination of Hilty did not develop bias and prejudice or inferences of recent fabrication on his part and rehabilitating evidence was therefore not admissible.

█ It is contended by the defendant Walsh that for the purpose of impeachment it was improper to elicit the fact that he refused on the advice of counsel to answer certain questions before the grand jury upon the ground that his answers would tend to incriminate him. At the trial he was accorded permission to fully explain his conduct before the grand jury. The use of evidence of a defendant's prior refusal to testify before a grand jury because of fear of self-incrimination does not, as this defendant claims, violate the

constitutional privilege. *(People* v. *Kynette, supra,* 15 Cal.2d 731, 750), and the fact that he acted on the advice of counsel does not destroy its admissibility. *(People* v. *Jones,* 61 Cal.App.2d 608, 627 [143 P.2d 726]; *People* v. *Sanchez,* 35 Cal.App.2d 231, 235 [95 P.2d 169]; *People* v. *Graney,* 48 Cal.App. 773, 775 [192 P. 460].)

It is also contended that the court erred in giving at the request of the prosecution four instructions on the law of entrapment. Those instructions correctly state the law on that subject and appear to have been applicable in the present case as to the Griffin incident. Griffin testified that he consulted the district attorney before paying the bribe; that he proceeded under instructions from the district attorney; that he would not have paid the $50 except upon the advice of the district attorney's office, and that he did not pay the bribe for the purpose of clearing the job but as an aid to law enforcement officers. The defendant Walsh asserts that the matter of bribery originated with Griffin. Proper instructions on entrapment under such circumstances cannot be said to create an inference that the act charged was in fact committed or to confuse the jurors as to the primary issue of the case. *(People* v. *Jackson,* 42 Cal.2d 540 [268 P.2d 6].) While the instructions were not expressly limited to the Griffin incident and there was no evidence of entrapment as to the Stubblefield incident, it does not appear that the jury would likely be confused by such lack of limitation.

Other claims of error are without merit.

The evidence of bribery on the part of the defendants is abundantly sufficient to support the verdicts and judgments. They were given a fair trial and have advanced no sufficient reason for a reversal.

The judgments and orders are affirmed.

Gibson, C. J., Spence, J., and McComb, J., concurred.

SCHAUER, J., Dissenting.—In my view it was error to receive in evidence, over the objection of defendants, the self-serving and unsworn writings of the complaining witnesses. Furthermore, as I read the record, the instructions on entrapment were not applicable to any issue before the court and it was error to give them.

For further elucidation and strong documentation of the law supporting the views above stated, reference is made to the

opinion prepared for the District Court of Appeal by Presiding Justice Shinn, concurred in by Justices Wood (Parker) and Vallée, and reported in (Cal.App.) 286 P.2d 915.

For the reasons above stated I would reverse the judgment.

Carter, J., and Traynor, J., concurred.

Appellants' petitions for a rehearing were denied October 10, 1956. Carter, J., Traynor, J., and Schauer, J., were of the opinion that the petitions should be granted.