[Crim. No. 5479. Second Dist., Div. Three. Nov. 7, 1956.]

THE PEOPLE, Respondent, v. JOE VERA, Appellant.

David C. Marcus for Appellant.

Edmund G. Brown, Attorney General, Clarence A. Linn, Assistant Attorney General, and Raymond M. Momboisse, Deputy Attorney General, for Respondent.

VALLÉE, J.—By information defendant was charged in Count I with having assaulted Celia Sanchez by inflicting injury upon her right leg by use of a stick; in Count II with having assaulted her by inflicting injury to her left arm by jumping on it; in Count III with having assaulted her by inflicting injury to her legs, back, and other parts of her body by use of a garden hose; in Count IV with having assaulted her by knocking out her teeth; and in Count V with having committed acts denounced by section 288 of the Penal Code upon her. In the counts charging assault it was

alleged it was by force likely to produce great bodily injury. At the first trial of the charges the jury disagreed. At the second trial with a jury defendant was acquitted of the offenses charged in counts I, II, IV, and V and convicted of the offense charged in Count III. He appeals from the judgment and the order denying his motion for a new trial.

Defendant is the husband of Trinidad Vera. Celia and Jessie Sanchez are Trinidad's children by a prior marriage. Celia was 9½ and Jessie 12 years of age at the times in question. Defendant, Trinidad, Celia, Jessie, and six children of defendant and Trinidad lived together in Norwalk.

Prior to the present prosecution Trinidad had been convicted by a jury of having assaulted Celia by inflicting injury to various parts of her body by use of a garden hose. At the trial of that charge Celia and Jessie testified it was their mother, Trinidad, who had beaten Celia with a rubber hose. Defendant also so testified at that trial. After Trinidad had been convicted of that and other offenses, defendant was charged with the offenses noted above.

At the trial of the present case Trinidad testified against defendant. On direct examination she testified that on one occasion in 1954 defendant had hit Celia on the head and on the side of the shoulders with a long stick; he had hit Celia "a lot of times" on the back and "all over the body" with a rubber hose; on more than one occasion he had twisted Celia's arm. She also testified that at the time she was arrested she told the police she was the only one who had hit Celia, that she had beaten her with a rubber hose for two or three months before her arrest; she had knocked Celia's teeth out, causing her to bleed, and had opened a wound in her scalp with the rubber hose; she had burned her with an iron, broken her arm, and bitten her nails off. She also had told the police at that time that defendant had not done any of these things—that she alone "had been responsible for all the beatings." She testified at the trial of the present case that she had lied to the police at that time. She had been confined about eight months in a state institution for women at the time she testified at the latter trial.

On cross-examination Trinidad testified she heard defendant testify against her at her preliminary hearing; she "wasn't mad" at him after she heard him testify; during the trial of the case against her she had not said that if she ever got her hands on defendant she would kill him; she asked "to come in to testify against him"; about two weeks

before she testified an officer told her she did not have to testify against him if she did not want to; she wanted to testify against him. Trinidad further testified that the first time after her arrest she told anybody that defendant had been inflicting injuries on Celia was at her preliminary hearing; she told the policewoman who took her there.

On redirect examination Trinidad testified this was not the first time she ever told anyone defendant had struck Celia; at her preliminary hearing she told Officers Uttke and Barner that defendant "had also hit Celia"; she talked to a public defender before her preliminary hearing; she had no objection to the public defender disclosing any information she related to him. Whereupon the following occurred:

"Q. By MR. BUSCH: Mrs. Vera, this conversation that you had with Josephine Uttke and Mrs., or Miss Barner, on April 28, 1954, was that before Joe Vera testified against you at the preliminary hearing? A. To be honest, I don't remember whether it was before or after.

"Q. Do you recall whether or not your preliminary hearing was on May 6th, 1954? A. I know it was in May, but I don't remember the date.

"Q. And was the conversation that you had with your lawyer, was that before Mr. Vera testified against you in the preliminary, or testified in the preliminary hearing. A. No, because I talked to him before.

"Q. You talked to the lawyer before Mr. Vera testified? A. Yes.

"MR. MARCUS: Your Honor, may my objection be noted to this entire line of interrogation at this time?

"THE COURT: So far as relates to subject matter as to statements made in the past on the same subject matter, I think it all comes within the rule as to, let's call it rehabilitation. If there is any additional objection, why you can introduce it as we go along.

"Go ahead. . . .

"Q. By MR. BUSCH: Did you have a conversation with your attorney, the Public Defender, before the preliminary, wherein you discussed whether or not Joe Vera hit Celia? A. Yes.

"Q. And did you have a conversation with your attorney before the preliminary hearing wherein it was discussed whether or not Celia had ever complained to you that Joe Vera had molested her? A. Yes."

On recross-examination Trinidad testified that at her preliminary hearing she told the public defender defendant

"had committed the act upon Celia"; she realized then "that the promise Mr. Vera had made me to get me an attorney had turned me down."

As part of the People's case in chief, after Trinidad had testified, Josephine Uttke, a deputy sheriff, over objection, was permitted to testify that when Trinidad saw defendant in the courtroom before her preliminary hearing she said, " 'You know, he's responsible for most of this.' And I said, 'What do you mean by that?' She said, 'He tried to molest her.' And, when she told me about it, which is referring to Celia, she said, 'Since then, he has been very mean to her, and he has beat her up as much as I have.' And I said, 'Well, you think he's responsible for this, too?' And she said, 'Yes, I do.' " In the presence of Sergeant Barner, another deputy sheriff, Trinidad said, " 'My husband Joe is responsible as much for this as I am. He tried to molest the girl, and she told me it, and since then, he has been very mean and vicious to her, and he has beat her up as much as I have.' "

Sergeant Barner, also over objection, testified, "I asked Mrs. Vera what it was she wanted to talk to me about, and she told me that she hadn't told us the whole truth, that Joe was responsible for part of Celia's injuries. I asked her was [sic] he had done, and she said, well, he had mistreated Celia the same as she had, and I asked her how it had come about. She said that Celia had told her that Joe had molested her, and after that Joe had started whipping her and using the hose on her. I asked her why she hadn't told us that before. She said because she was afraid of him, and because he had told her that, due to his previous record, it would go harder on him. I told her to be sure that she told her attorney about that, and that was about the sum and substance of the conversation, because right after that her Public Defender wanted to talk to her."

The deputy public defender who represented Trinidad at her preliminary hearing testified, over objection, that prior to that hearing Trinidad told him defendant had struck Celia with a rubber hose, injuring her eye, breaking her nose, and knocking out two of her upper incisors, and "she also said that about a week prior to her arrest that she had the feeling that Joe was concerned about the possibility of Celia's condition being discovered, and told her at that time that if any arrest were made, that she should take the full responsibility, that because of his prior record things would be much hotter for him than for her if he were arrested; and that if it should

occur he would get a lawyer for her, and see that she was taken care of.''

The only assignment of error is that the court erred in permitting Trinidad to testify to her conversations with Officers Uttke and Barner and the public defender and in permitting them to testify to those conversations.

We are compelled to hold the court did not err in admitting the testimony. The precise question was decided adversely to defendant's contention by the Supreme Court in the recent case of *People* v. *Walsh,* 47 Cal.2d 36 [301 P.2d 247], a prosecution for bribery. The court declared (pp. 40-43) :

''The defendants next urge that the court committed prejudicial error in admitting certain evidence claimed to be self-serving and hearsay. The contention arises out of attempts by the prosecution to rehabilitate their witnesses Stubblefield and Griffin. On cross-examination of these witnesses the defendants attempted to show that their testimony might have been fabricated and that they might have been biased and prejudiced towards the defendants. On redirect examination of the witness Stubblefield, the prosecution was allowed, over objection, to introduce certain prior consistent statements of the witness for rehabilitating his testimony. The court at that time instructed the jury that the evidence was being admitted not to prove the truth of the statements but for the limited purpose of refuting any suggestions or inferences that the witness had 'fabricated' his testimony at the trial or that his testimony had been actuated by bias or ulterior motives. The rehabilitating evidence showed that Stubblefield had placed an endorsement on the back of the $125 check before he cashed it, reading 'paid Vince Walsh $125.00 for fixing job 38 & Pacific, San Pedro job.' Also evidence was introduced to the effect that Stubblefield had, on a prior occasion, told his general contractor that he had paid the inspector $125 to clear the job.

''Likewise there was an attempt on cross-examination to impeach the testimony of the prosecution's witness Griffin and to show a recent fabrication on his part. As rehabilitating evidence, after such cross-examination, the prosecution introduced a check stub made out by Griffin at the time he wrote the $50 check with the notation thereon ''L.A. City Inst. Pay-off $50.00,' and he was allowed to explain that 'Inst.' meant 'Inspector.' Also, a store clerk who had cashed the check testified that Griffin had remarked at the time that

it was for the purpose of a pay-off. Again, the jury was admonished by the court that this evidence was admitted for the limited purpose of 'refuting the suggestions or inferences, if any, that this witness had beforehand or at the trial fabricated his testimony, or that his testimony was actuated by bias or ulterior motives, and it is introduced and received into evidence to prove the state of mind of this witness on a date prior to this trial for the purpose of determining whether his state of mind at that time was the same as disclosed at this trial, and to prove that his testimony at this trial was not a fabrication.'

"At the conclusion of the trial the court instructed the jury again as to the limited purposes for which rehabilitating evidence had been admitted, using substantially the same language as above set forth and as approved in *People* v. *Weatherford,* 78 Cal.App.2d 669, 697 [178 P.2d 816].

"It is the rule generally and in this state that where the opposition has assailed the testimony of a witness as being of recent fabrication, an exception to the hearsay rule allows the admission of evidence of statements or conduct prior to the claimed fabrication and consistent with the testimony of the witness at the trial, 'not to prove the facts of the case, but as tending to show that the witness has not been controlled by motives of interest and that he has not fabricated something for the purpose of the case.' (*People* v. *Kynette,* 15 Cal.2d 731, 753-754 [104 P.2d 794]; see also *Sweazey* v. *Valley Transport, Inc.,* 6 Wn.2d 324 [106 P.2d 567, 111 P.2d 1010, 140 A.L.R. 1]; 140 A.L.R. 93.)

"The defendants contend that the court improperly applied the 'prior consistent statement' rule; that an express limitation upon the use of this exception to the hearsay rule is that such prior remarks must have been made 'prior to the time when the motive of interest existed' (*People* v. *Kynette, supra,* 15 Cal.2d 731, 754; *Mason* v. *Vestal,* 88 Cal. 396, 398 [26 P. 213, 22 Am.St.Rep. 310]; *Barkly* v. *Copeland,* 74 Cal. 1, 5 [15 P. 307, 5 Am.St.Rep. 413]); that it is evident that these witnesses were as much biased and prejudiced at the time they made the prior statements as they were during the trial, and that the jury was confused and misled by the instructions of the court that the evidence was admissible to refute inferences that the witnesses had 'at this trial' fabricated their testimony or that 'at this trial' their testimony was actuated by bias or ulterior motives. . . .

". . . . . . . . . . . .

"With reference to the questioned rulings and instructions it is to be noted that it is not necessary that the party desiring to impeach should expressly state that he seeks to prove a fabrication of recent date. It is sufficient if the record indicates a purpose to prove a recent fabrication. (*Davis* v. *Tanner*, 88 Cal.App. 67, 78-79 [262 P. 1106]; *Griffin* v. *Boston*, 188 Mass. 475 [74 N.E. 687]; *Baker* v. *Broadway & S.A.R. Co.*, 9 Misc. 20 [29 N.Y.S. 40]; *Sweazey* v. *Valley Transport, Inc., supra*, 6 Wn.2d 324 [106 P.2d 567, 111 P.2d 1010, 140 A.L.R. 1]; 140 A.L.R. 152 and cases collected at pp. 153-154.) In the present case inferences of fabrication since the alleged bribes could be fairly drawn by the jurors in addition to those which would tend merely to impeach the witnesses' general reputations or otherwise cast doubt upon their testimony. We find no error in admitting evidence of prior consistent statements for the limited purpose of refuting inferences of subsequent fabrication and to show a prior state of mind consistent with that shown by the witnesses when testifying."

The cross-examination of Trinidad was in part an attempt to show that her testimony that defendant had caused the injuries to Celia was of recent fabrication brought about by the fact that defendant had testified against her at her preliminary hearing and at the trial of the charges against her. Thus, under the rule "that where the opposition has assailed the testimony of a witness as being of recent fabrication, an exception to the hearsay rule allows the admission of evidence of statements or conduct prior to the claimed fabrication and consistent with the testimony of the witness at the trial" as applied by the Supreme Court in Walsh, the testimony of Officers Uttke and Barner and of the public defender as to the conversations with Trinidad before her preliminary hearing were admissible for the sole purpose "of refuting inferences of subsequent fabrication and to show a prior state of mind consistent with that shown" by her when testifying at the trial of defendant.

The judgment and the order denying a new trial are affirmed.

Wood (Parker), J., concurred.

SHINN, P. J.—I concur in the judgment. It is well settled that where the circumstances are such as to reasonably support a claim that the testimony of a witness at the trial is

a *recent* fabrication evidence that the witness previously made statements substantially corresponding with his testimony may be received to meet the claim of recent fabrication. There is a vast difference between a claim of recent fabrication and the usual cross-examination, the invariable purpose of which is, of course, to discover any untruth in the testimony. If no facts are brought out to indicate that the testimony may be of recent invention, and not merely untruthful, the rule has no application. I can think of no more dangerous or unsupportable rule of evidence than one that would permit the testimony of a witness to be bolstered by evidence that he had previously made statements consistent with his testimony for the sole reason that he had been cross-examined with the hope of proving the falsity of his testimony. I do not believe that it will ever become the law in California that the testimony of every prosecuting witness whose veracity is challenged can be fortified by evidence that on a former occasion he wrote down in a diary, or on a calendar or some scrap of paper his unsworn version of the occurrence. Such an extraordinary departure from the fundamental rules of evidence would open the way to the unlimited manufacture of evidence. No justification for it can be found in the mere fact that the witness was cross-examined, not as to facts of recent occurrence which might have influenced his testimony, but only as to testimony given in the course of his direct examination.

It is clear to me that the majority opinion does not impliedly endorse the proposition that rehabilitating evidence may be received when there is in evidence no circumstance or event of recent occurrence, such as a desire for revenge, self-interest or pressure, which might have caused the witness to give testimony he would not have given otherwise. But I would point out that the opinion should be carefully read in the light of all the facts of the present case, as they are stated, for an understanding of the reasons for affirmance of the judgment.