[Crim. No. 6897. Second Dist., Div. Three. Apr. 29, 1960.]

THE PEOPLE, Respondent, v. MILLARD GEORGE GREEN, Appellant.

Ellery E. Cuff, Public Defender (Los Angeles), Melvin L. Pierovich and Richard W. Erskine, Deputy Public Defenders, for Appellant.

Stanley Mosk, Attorney General, Elizabeth Miller and Clara E. Kauffman, Deputy Attorneys General, for Respondent.

VALLÉE, J.—By information defendant was charged with burglary and with assault with intent to commit rape. The offenses were alleged to have been committed on March 15, 1959. A jury found defendant guilty of both offenses. His grounds for reversal are that the court erred in refusing to give two instructions he requested and in refusing his request to reopen the case or, in the alternative, in refusing to grant his motion for a new trial on the ground of newly discovered evidence.

Pearl Morgan, who was not the wife of defendant, testified: On March 15, 1959, she was living alone in room 312 at the Post Hotel in Los Angeles. Defendant was employed at the hotel as a maintenance man. She worked at a restaurant about two blocks away. On that day she was to go to work at 4 p.m. She was in her room alone, dressed in a slip, about to take a bath before going to work, when she heard the noise of a key in the lock of the door. There was a Yale lock on the door; it was locked. There was no inside bolt. When she heard the noise "the door opened quick," defendant entered, and pushed her onto the bed. He said something about her having engaged in sexual intercourse with someone else. He held her on the bed and tried to accomplish an act of sexual inter-

course. She "hollered," struggled, and finally "wriggled away from him." She ran toward the phone, he knocked her arm down, called her foul names, and pushed her toward the window. She tried to run to the door; he pushed her back toward the bed; she kept running around the room; he tried to get her, saying "he was going to pop." While she was running around trying to get away from him, he offered her $5.00. She said, "No, I don't do business that way." She went to the door again and "he finally gave up and he went out." That was the last she saw of him. She believes defendant was in the room 15 or 20 minutes. Asked if defendant was drunk at the time, she replied: "Well, he acted sort of half loaded. I don't know his actions anyway, so I wouldn't know." Her slip was not torn. There were no marks or bruises on her.

Lester Powell, the desk clerk at the Post Hotel, testified: Defendant did not normally work on Sundays. On March 15, 1959, a Sunday, defendant asked for the passkeys to the various rooms, saying he had some chores to finish up in the building and needed the keys. He gave defendant the keys. He went off duty at 3 p.m.

Jack Naiman, the afternoon clerk at the hotel, testified: He came on duty about 2:45 p.m. on March 15, 1959. About 3:15 Pearl Morgan came down the stairs into the lobby and "reported what happened." He called the police at her request. Defendant "came rushing out, started out through the front door and Mr. Higgins and I stopped him," ordered him to sit down and wait until the police came. Defendant said he had to go downstairs and he started edging toward the stairs. He told defendant to go down there and wait. He took the passkeys away from defendant. The police arrived in about 10 minutes. He went downstairs with the police. Defendant was not there. The police searched the building but did not find him. A door, which was an exit from the basement, was open. Defendant returned to the front of the hotel about 8 o'clock that evening. The officers went out and arrested him.

Officer Lightsey of the Los Angeles Police Department testified: He received a call to go to the Post Hotel about 3:15 on March 15, 1959. He and his partner searched all parts of the hotel including the basement, where defendant lived. They did not find defendant. There were two exits from the basement. They were unlocked. About 3:55 p.m. he made out a crime report. Pearl Morgan read it over and signed it. He

observed Pearl Morgan's condition; she had been crying; "her face was awfully red"; she was very nervous; her hair was disarranged and the front of her slip was torn.

The report, signed by Pearl Morgan, related what had occurred substantially as testified by her.

Defendant testified that about March 11 or 12, 1959, Mrs. Morgan said to him she had to make a little on the side because she was not making enough to take care of expenses, that she had to do her washing and ironing. On Saturday, March 14, he was instructed by the desk clerk to go to her room. He did, and discussed with her the replacement of a light bulb and the obtaining of an electric socket and a floor lamp. He obtained the items and said to her, "Well, I wouldn't mind having a date with you." She said, "Well, I don't know." He said, "Give you $5.00." She said, "I guess that will be all right." He went to bed with her, had intercourse, and made a date for Sunday afternoon between 1 and 2 o'clock. That evening he gave her $5.00 in the restaurant where she worked. About 2:30 p.m. on Sunday, the 15th, he went to her room. She let him in. He said, "Are we going to fill that date?" She said, "Well, I guess so." He gave her $5.00. She lay down on the side of the bed and he sat on the bed. He was pulling his shoes off; he got one shoe off. She jumped up and said, "Jump up, Mac, there's somebody at the door." He was hard of hearing and didn't hear anyone. She said, "Mac, you had better go. I will see you later." He left the room, went to his own room, obtained the keys to the linen and soap rooms from his dresser, returned them to the desk clerk, and left the hotel. He went to his sister's home. He returned to the hotel about 8 p.m. and was arrested. Defendant admitted three prior felony convictions: manslaughter in the use of an automobile in Kansas in 1937; forgery in Texas in 1941; and rape in Oklahoma in 1943.

In rebuttal Pearl Morgan testified: she did not have an act of intercourse with defendant and he did not give her $5.00 on March 14, 1959; he did not give her $5.00 on Sunday, March 15; she saw defendant on Saturday evening (March 14) at the place where she worked.

Defendant requested, and the court refused to give these instructions:

First: "In the case of certain crimes it is necessary that in addition to the intended act which characterizes the offense, the act must be accompanied by a specific or particular intent without which such a crime may not be committed.

"Thus in the crime of assault with intent to commit rape, a necessary element is the existence in the mind of the perpetrator of the specific intent to have intercourse even if it is necessary to use force or fear to overcome resistance, and unless such intent so exists that crime is not committed."

Second: "Whatever the extent and however rough the fondling of a woman, if her pursuer without fear of interruption voluntarily abandons his endeavor to ravish her . . . then the assault he employed was not an assault with intent to commit rape."

The court refused the first instruction on the ground it was covered by instructions given. The instructions which the court stated covered the subject are set out in the margin.[1] No reason was given for refusal of the second instruction.

▉ The subject matter of the first instruction refused was fully covered by the instruction given stating that a specific intent was a necessary element in the crime of assault with intent to commit rape, and unless such intent exists that crime is not committed. (*Cf. People* v. *Miller,* 56 Cal.App. 472, 478-479 [206 P. 89] ; *People* v. *McClure,* 117 Cal.App. 381, 386 [4 P.2d 211].) The instruction as given is a correct statement of the law. (*People* v. *Meichtry,* 37 Cal.2d 385, 389-390 [231 P.2d 847].)

▉ It would have been error to have given the second instruction, the refusal of which defendant complains. ▉▉ If the defendant intends to have sexual intercourse with his victim and to use force to overcome her resistance, the crime of assault with intent to commit rape is committed. (*People*

[1] "Every person who assaults another with intent to commit rape is guilty of a crime.
"You will note that there are two elements of this crime: First, an assault; and second, a specific intent to commit rape. Hence, before you may find the defendant guilty of the crime charged against him in count 2 of the information, you must find from the evidence that he committed acts constituting an assault as alleged, and as I shall define the term 'assault' in my instructions, and, further, that in committing such acts he was motivated by an intent to commit rape, as that offense is defined in my instructions. [The crime of assault with intent to commit rape is completed if an assault is made and if at any moment during the assault the aggressor intends to commit rape upon the woman assaulted, even though he abandons that intention for any reason before the consum[m]ation of the act.] "
"Every person who enters any house, room, apartment, with intent to unlawfully steal, take and carry away the personal property of another of any value or to commit any felony, is guilty of burglary. The essence of a burglary is entering a place such as I have mentioned with such specific intent; and the crime is complete as soon as the entry is made, regardless of whether the intent thereafter is carried out."

v. *Nye*, 38 Cal.2d 34, 37 [237 P.2d 1].) If an assault
with intent to commit rape is made, it is no less a crime,
although the aggressor abandons his intention before consum-
mation of the act. (*People* v. *Stewart*, 97 Cal. 238, 240 [32
P. 8].) Where an assault on the prosecutrix is proved,
coupled with acts indicating a purpose to commit rape,
whether such was the defendant's intent is for the trier of fact,
though he abandoned his design and fled without accomplish-
ing his purpose. (*People* v. *Bowman*, 6 Cal.App. 749 [93 P.
198].) A similar instruction was condemned in *People* v.
*Johnson*, 131 Cal. 511, 514 [63 P. 842].

After the jury had been partially instructed, the court
adjourned until the following morning. At the opening of
court the following morning counsel for defendant made a
motion to reopen the case for the purpose of presenting newly
discovered evidence. He stated that at the close of court the
previous day he "was approached by a person who had previ-
ously been a witness by the name of Lester Powell, who told
[him] that on Sunday at a time prior to the alleged time of
the crime, the defendant had talked to him and informed him
that he, the defendant, had had a—had had sexual relations
before with victim on a previous Saturday for pay and stated
that in substance that the victim was a good subject of sexual
relations so to speak, and suggested that perhaps he, the
witness, Lester Powell, would wish also to have sexual rela-
tions with the victim, which he could do, he thought, defendant
thought, for pay; to which Mr. Powell replied that he wasn't
interested." Counsel further stated he offered the "evidence
as a prior consistent statement to overcome the inference of
recent fabrication, in effect to rehabilitate defendant." The
motion was denied. One of the grounds for a new trial was
the discovery of this evidence. An affidavit of Lester Powell
was filed in support of the motion to the same effect as stated
by counsel on the motion to reopen the case. The motion for
a new trial was denied.

Defendant asserts the court erred in denying his motion
to reopen or, in the alternative, in denying his motion for a
new trial based on newly discovered evidence. He argues the
evidence was admissible on each of two grounds: first, as a
prior consistent statement to rebut the implication of recent
fabrication in defendant's testimony of having had an act of
sexual intercourse for money with Pearl Morgan the day be-
fore the alleged assault and, second, to show defendant's state
of mind, a lack of intent to commit rape.

██ Where the opposition has expressly or impliedly assailed the testimony of a witness as being of *recent* fabrication, an exception to the hearsay rule allows the admission of evidence of statements or conduct prior to the claimed fabrication and consistent with the testimony of the witness at the trial, not to prove the facts of the case but as tending to show that the witness has not been controlled by motives of interest and that he has not fabricated something for the purpose of the case. It is sufficient if the record indicates a purpose to prove a *recent* fabrication. (*People* v. *Walsh,* 47 Cal.2d 36, 41-43 [301 P.2d 247]; *People* v. *Vera,* 145 Cal.App.2d 649, 653-655 [302 P.2d 887].)

██ In the present case the prosecution did not expressly or impliedly assail the testimony of defendant as of recent fabrication. Nothing was brought out on the cross-examination of defendant to indicate that his testimony was of recent fabrication. There was no inference of recent fabrication on his part. There is nothing in the record indicating a purpose to prove a recent fabrication. The rehabilitating evidence was not admissible for that purpose.

Counsel characterizes the proffered testimony as newly discovered evidence. We think that under the circumstances of this case the rules applicable to a motion for a new trial on the ground of newly discovered evidence are applicable to the motion to reopen. ██ These requirements must be fulfilled for the granting of a new trial on the ground of newly discovered evidence: (1) the evidence and not merely its materiality must be newly discovered; (2) the evidence must not be merely cumulative; (3) a different result must be probable on a retrial of the cause; (4) the party could not with reasonable diligence have discovered and produced it at the trial; (5) these facts must be shown by the best evidence which the case admits. (*People* v. *Sutton,* 73 Cal. 243, 247 [15 P. 86]; *People* v. *Beard,* 46 Cal.2d 278, 281 [294 P.2d 29]; *People* v. *Warren,* 175 Cal.App.2d 233, 245 [346 P.2d 64].) ██ It cannot be said that the evidence was *newly* discovered. Defendant knew whether he talked to Powell, whether he made the statement to Powell, and exactly what he said. There was no showing that defendant could not with reasonable diligence have produced the evidence at the trial.

██ The denial of a motion for a new trial on the ground of newly discovered evidence will not be disturbed except on a clear showing of an abuse of discretion. (*People* v. *Miller,* 37 Cal.2d 801, 807 [236 P.2d 137]; *People* v. *Greenwood,* 47 Cal.

2d 819, 821 [306 P.2d 427] ; *People* v. *Patterson,* 169 Cal.App. 2d 179, 187 [337 P.2d 163].)

We conclude the court did not err in refusing to reopen the case and that it did not abuse its discretion in denying a new trial.

We do not decide whether the offered evidence would have been admissible to prove a lack of intent to commit rape if it had been offered as part of the defense at the trial.

The judgment and order denying a new trial are affirmed.

Shinn, P. J., and Ford, J., concurred.