**BEATY v. UNITED STATES.**

No. 6546.

United States Court of Appeals
Fourth Circuit.

Argued March 16, 1953.

Decided April 7, 1953.

C. W. Higgins, Winston-Salem, N. C., W. M. Nicholson, Charlotte, N. C. and R. Gregg Cherry, Gastonia, N. C., for appellant.

Thomas A. Uzzell, Jr., U. S. Atty., Asheville, N. C., for appellee.

Before PARKER, Chief Judge, and SOPER and DOBIE, Circuit Judges.

PARKER, Chief Judge.

This is an appeal from a conviction and sentence under an indictment charging income tax evasion in violation of the provisions of section 145(b) of Title 26 of the United States Code. Reversal is asked on the ground that the defendant was not arraigned, that verdict of acquittal should have been directed on the evidence, that there was error in the admission and rejection of testimony, that the United States Attorney asked improper questions, and that the trial judge improperly instructed the jury as to the result of an inquiry conducted in its absence, improperly commented on the duty of defendant to keep correct records and improperly urged the jurors to agree. We find no merit in any of the grounds urged. Certainly there is nothing in any of them of such a prejudicial nature that it would justify the granting of a new trial.

The first ground urged is that the court proceeded with the trial without

a formal arraignment and without a plea to the bill of indictment. This contention seems to be based upon the fact that the arraignment and plea do not appear in the stenographer's notes of the trial. The District Judge has specifically found, however, that plea of not guilty was duly entered by defendant upon his arraignment in open court, that such plea was entered by the clerk upon his original record and was referred to by the judge in his charge to the jury. We are bound by this finding; but, even if this were not so, it is well settled that arraignment and plea were waived by going to trial. Garland v. State of Washington, 232 U.S. 642, 34 S.Ct. 456, 58 L.Ed. 772; Rulovitch v. United States, 3 Cir., 286 F. 315; Williams v. United States, 6 Cir., 3 F.2d 933; King v. United States, 6 Cir., 25 F.2d 242.

Equally without merit is the contention that the evidence was not sufficient to take the case to the jury. In the tax years 1945, 1946 and 1947, defendant was engaged in the taxicab business in the city of Charlotte, North Carolina. He rented a number of taxicabs to drivers at a rental of $10 per day each except on Saturdays and Sundays when the rental was $12 per day each. At the end of each day the drivers were supposed to pay the rental due by them. The rental paid by each was placed in an envelope marked with the number of the taxicab and was checked against yellow check sheets showing the taxicabs in operation and the envelope was then dropped through a slot into a large iron safe. The yellow check sheets were destroyed. From the safe the envelopes containing the rental money were subsequently taken and opened and the contents were supposed to be entered upon defendant's books and deposited in bank. The entries in the books show receipts from the operation of taxicabs of just about enough to cover the costs of operating the business; but they also show operation of the taxicabs for less than a third of the time, whereas the government introduced evidence of the drivers that they were in operation for the greater part of the time and that the rental received therefrom was necessarily a much greater sum than shown by the books. The income tax returns corresponded with the books. An expert witness testified on the basis of the testimony given by these drivers that the rental received by defendant was an amount for each year in excess of the amount shown on the books and reported by defendant and that a computation of income tax due thereon was considerably in excess of the amount reported. It was significant that the entries in the books of receipt of taxicab rental over long periods of time appeared to have been made at the same time and in the same handwriting and that the amounts were uniformly $10 or $12 per day whereas the testimony was that varying amounts were received from time to time. There was also testimony to the effect that defendant had received as rental of buildings and from the sale of cars more than he reported in his tax returns.

The testimony to which we have referred would have been sufficient of itself to take the case to the jury, but it was fortified by other evidence tending to show fraudulent concealment. One Brown, a railroad police officer, testified to having gone late at night to defendant's filling station, after the station had been closed, and having found the defendant sitting before a table on which there was a large sum of money and beside an open iron safe in which there was also a large sum, engaged in counting the money and with a pistol and shot gun at hand to guard it. The officer testified that he asked defendant why he did not deposit the money in the bank and that defendant replied that he did not wish to pay $20 a hundred on it, the clear inference being that he did not deposit it because he wished to avoid income tax. There was testimony also that sometime later a laborer working on defendant's premises dug up a large sum of money, which defendant admitted on the trial was his and which amounted according to his admission to $7,000 or $8,000, although there was evidence that the amount was largely in excess of this. The laborer made off with the money, but defendant complained to the local police and it was eventually recovered. On cross

examination defendant refused to say how he had spent it. The evidence as to his having the large sum in the night time and saying that he did not wish to pay $20 a hundred on it, came to light when the money was dug up by the laborer and complaint with regard to its loss was made to the police. The defendant claimed that the buried money had been accumulated by him over a long period before the tax years in question, and he denied making the statement about wishing to avoid paying $20 a hundred; but the questions thus raised were for the decision of the jury. Certainly this with the other evidence to which we have adverted made the case one for the jury's determination.

█ Defendant complains because the taxicab drivers called as witnesses by the prosecution were allowed to refresh their memories, as to the periods during which they were operating defendant's cabs, by referring to affidavits which they had made and which had been prepared by treasury representatives. These affidavits had been based upon municipal records showing the initial and final dates of the operation of the cabs and the recollection of the witnesses as to the portion of the time within which the cabs had been operated within this period. The matter was one resting very largely in the sound discretion of the trial judge, Buckley v. United States, 6 Cir., 33 F.2d 713, 717; 58 Am.Jur. p. 325; note 125 A.L.R. p. 24; and certainly there was no abuse of discretion in permitting the witnesses to refresh their memories by referring to affidavits which they had made and which, as to the dates involved, were based upon records otherwise in evidence. As to the regularity with which the cabs were operated during the period, it does not appear that there was any need of refreshing of memories as to this and that the witnesses testified with regard thereto from independent recollection.

█ Objection was made to the ruling of the court in permitting the witness Cline, an expert accountant, who had sat in court and heard the testimony of the witnesses, to testify as to the difference in defendant's income tax which would have resulted from a correct reporting of the income disclosed by this testimony. We think that this was clearly proper since the jury was left free to accept or reject the testimony upon which the testimony of the expert was based and with it that testimony. United States v. Johnson, 319 U.S. 503, 519, 63 S.Ct. 1233, 1241, 87 L.Ed. 1546. In reversing the Court of Appeals in the case cited, the Supreme Court said:

"The court below held that the admission of the testimony of an expert witness regarding Johnson's income and expenditures during the disputed period invaded the jury's province. The witness gave computations based on substantially the entire evidence in the record as to Johnson's income. The Circuit Court of Appeals held that while undoubtedly 'a proper hypothetical question could have been framed and propounded', in fact the witness was not giving answers on the basis of any assumption of hypothesis but as testimony on the 'controverted issue' in the case. 7 Cir., 123 F.2d 111 at page 128. We do not so read the meaning of this testimony. No issue was withdrawn from the jury. The correctness or credibility of no materials underlying the expert's answers was even remotely foreclosed by the expert's testimony or withdrawn from proper independent determination by the jury. The judge's charge was so clear and correct that no objection was made, though, of course, there were exceptions to the refusal to grant the usual requests for charges that were either redundant or unduly particularized items of testimony. The worth of our jury system is constantly and properly extolled, but an argument such as that which we are rejecting tacitly assumes that juries are too stupid to see the drift of evidence. The jury in this case could not possibly have been misled into the notion that they must accept the calculations of the government expert any more than that they were bound by the calcula-

tions made by the defense's expert based on the defendants' assumptions of the case. So long as proper guidance by a trial court leaves the jury free to exercise its untrammeled judgment upon the worth and weight of testimony, and nothing is done to impair its freedom to bring in its verdict and not someone else's, we ought not be too finicky or fearful in allowing some discretion to trial judges in the conduct of a trial and in the appropriate submission of evidence within the general framework of familiar exclusionary rules."

Another objection pressed upon us was that the court permitted evidence of a statement to Chief of Police Littlejohn made by the witness Brown as to his having discovered the defendant in the filling station with the large sum of money before him and of defendant's having said to him that he did not deposit the money in the bank because he did not want to pay $20 a hundred on it. The defendant, however, denied making the statement to Brown and attempt was made on cross examination to impeach Brown's credibility. Brown's statement to Littlejohn made ante litem motam was competent, we think, for the purpose of corroborating Brown's testimony and was admitted solely for that purpose. See Goins v. United States, 4 Cir., 99 F.2d 147, 150; Dowdy v. United States, 4 Cir., 46 F.2d 417, 424; Boykin v. United States, 5 Cir., 11 F.2d 484, 486; Di Carlo v. United States, 2 Cir., 6 F.2d 364, 366; note 140 A.L.R. 21, 154. Prior statements are not like ordinary hearsay. The one who made them is before the jury and is subject to cross examination about them, and the jury is perfectly well able to judge whether they do or do not corroborate him. To what extent they should be admitted for purposes of corroboration is a matter resting largely in the discretion of the trial judge and we do not think that the admission of the evidence here constituted an abuse of discretion or furnishes any ground for awarding a new trial.

Other objections to the admission or rejection of testimony require but brief notice. Testimony offered to the effect that some of defendant's cabs were idle for a part of the time might properly have been admitted, but it was not inconsistent with the prosecution's testimony and could not have affected the result, as there was no dispute as to some of the cabs being idle from time to time. The same is true of the testimony as to the rule with respect to the depreciation on cabs followed by the taxing authorities and of the testimony that those who prepared the tax returns for defendant had prepared the returns for others and were considered competent. Testimony that the yellow check sheets were the original entries of receipts from operation of the cabs and that they had been destroyed was in accord with the facts otherwise established in the case and for all practical purposes admitted. There were other objections to the admission and rejection of testimony which, like these, related to minor matters, could not have affected the result and do not merit discussion.

Defendant complains because the United States Attorney examined him at length with respect to his being guilty of other crimes and as to matters tending to discredit him. The defendant, however, did not make timely objection to this cross examination and without objection answered the questions, denying the matters of impeachment inquired about. No attempt was made by the prosecution to contradict him with respect to these answers. A motion was made to strike out that part of the cross examination, but its denial could not have harmed defendant since nothing was brought out that tended to impeach him. He could not sit by and allow questions to be asked and answer them and afterwards claim error with respect to their being asked. The extent to which an accused who has taken the stand in his own behalf may be cross examined as to collateral matters for the purpose of impeachment is a matter resting very largely in the discretion of the trial judge. United States v. Lawinski, 7 Cir., 195 F.2d 1, 7–8. The rule ordinarily to be followed was laid down by Judge McDermott, speaking for the Tenth Circuit in Coulston v. United States, 10 Cir.,

51 F.2d 178, in a passage quoted with approval by this court in Simon v. United States, 4 Cir., 123 F.2d 80, 85, 86, as follows:

"If the defendant takes the witness stand, a different rule comes into play. He steps out of his character as a defendant, for the moment, and takes on the role of a witness, and as such becomes subject to cross-examination in the same manner and to the same extent as any other witness. * * * In criminal cases, there may therefore be differences arising from variations in the common law in the different jurisdictions at the time of their admission into the Union. It may however be said that, subject to possible variants so arising, it is well settled in criminal cases in the federal courts that cross-examination must be confined to the subjects of the direct examination (citing cases); that the credibility of a defendant who has testified may be impeached in the same manner and to the same extent as any other witness, and no further (citing cases); questions asked on cross-examination for the purposes of impeachment should be confined to acts or conduct which reflect upon his integrity or truthfulness, or so 'pertain to his personal turpitude, such as to indicate such moral depravity or degeneracy on his part as would likely render him insensible to the obligations of an oath to speak the truth' (citing case); when such a question is asked and answered, the inquiry is ended; the government is bound by the answer in that it may not, on rebuttal, offer countervailing proof (citing cases). To this latter rule, there is one exception: In criminal cases a witness may be asked, for purposes of impeachment, whether he has been convicted of a felony, infamous crime, petit larceny, or a crime involving moral turpitude, and on rebuttal the record of such conviction is admissible. (Citing cases). A witness may not be asked if he has been accused or arrested for a crime, for the sufficient reason that it calls for hearsay evidence, and because accusation carries no implication of guilt."

■ During the trial counsel for defendant charged before the jury that witnesses for the government were being coerced and intimidated into testifying against him. The trial judge promptly inquired into the matter in the absence of the jury and found that there was no basis for the charge. When the jury returned to the box he advised them of the result of the investigation. Defendant objected to this but there is nothing in the objection. The natural effect of the charge made by defendant's counsel was to prejudice the prosecution's case. When inquiry developed that there was no basis for the charge, it was proper that the jury be so advised. The trial judge did what he could to absolve defendant's counsel of blame in the matter by stating that the testimony of the witnesses examined in the absence of the jury did not support the information which counsel had received.

■ Defendant took no exception to the judge's charge and does not now complain of anything contained therein. He does complain, however, of a statement made by the judge during the taking of testimony. Counsel for defendant had stated that all that the law required was that the taxpayer turn his books and records over to a competent man. The court said, "The law requires much more than that. It first requires them to keep accurate books for every cent he takes in and every disbursement he makes, and then turn these records over to the income tax accountant." It is argued that the effect of this was to withdraw from the jury the question of intent. We do not so construe the language of the judge, even if our attention be confined to what was said at this point. When we read his charge given at the conclusion of the trial, however, there can be no doubt as to the jury's having been charged correctly on the necessity for finding criminal intent and as to its duty to acquit the defendant unless it found that he "willingly and knowingly" attempted to evade payment of tax. The court said:

"Gentlemen of the jury, you will notice in this statute which I read to you

that the word 'wilful' is used, and in some instances the word 'knowingly' is set out. This is a criminal case; this is not a civil case; and that word 'wilfully' has a part in and plays a part of the particular controversy. It is a word that obviously would have to be legally defined to you, and about as good a definition of the word 'wilfully' that I know is this: Wilful or wilfully means doing an act purposely and deliberately, indicating a purpose to do it without authority and in violation of law. It will be necessary, before you could convict this defendant, that you would be satisfied of his guilt beyond a reasonable doubt, and that is to say that he wilfully attempted to evade and defeat the tax imposed by the law which I read and that he did that and you are satisfied from the evidence and beyond a reasonable doubt. If he evaded the tax, that there was no effort on his part of wilfully or knowingly evading the tax, he could not be guilty, because it would be necessary for you to find that he wilfully and knowingly attempted to evade this particular tax."

At another place in his charge, the judge said:

"The burden that is on the Government, gentlemen, is to prove that the defendant owed an income tax for the year 1945, '46 and '47, and that income tax must be shown from the evidence and beyond a reasonable doubt to be an amount over and above the amount that was returned and on which a tax was paid, and in addition thereto the Government must, before you can return a verdict of guilty in this particular case, satisfy you from the evidence and beyond a reasonable doubt that the defendant wilfully and knowingly attempted to evade his income tax and payment thereof which he was due to the Government under the income which he had made for that particular calendar year, and for these three calendar years as charged in the three counts in the bill of indictment. In that the crime is denounced by this statute which I have read to you and which is from 145, subsection B, is of wilfully attempting to defeat or evade the tax, and that is only complete when a taxpayer wilfully and knowingly files a false and fraudulent return with intent to defeat or evade any part of the tax due the United States. That is the crime that is denounced. I read to you again: 'This crime denounced by this statute of wilfully attempting to defeat or evade the taxes is complete only when the taxpayer wilfully and knowingly files a false and fraudulent return with intent to defeat or evade any part of the tax due the United States'. And that must be found before you can return a verdict of guilty from the evidence and beyond a reasonable doubt, and that that burden is cast upon the Government."

At the conclusion of the charge, the judge asked whether either side desired further instructions and said he would consider requests even though not in writing. Counsel for defendant replied that there was no request for further instruction on the part of defendant.

Defendant complains because of a statement made by the court to the jury when it reported late on Friday evening of the trial that it had not reached an agreement at that time. We have examined the statement carefully and find nothing in it of which anyone could justly complain. The jury was placed in charge of officers who were directed to care for them and look out for their comfort and was told to give further consideration to the case the following morning. There is nothing in what the court said from which it could be inferred that he intended to hold the jury together for an undue length of time or otherwise force an agreement.

We have examined the record and find that the trial was fairly conducted by the experienced trial judge who presided. The issues involved were comparatively simple issues of fact and the jury was correctly instructed as to the law applicable in the premises. Defendant, who was represented by able counsel, took the stand in his own

behalf and was allowed to develop his defense fully. The jury has found him guilty of the offense charged, and we find nothing in the record which would justify us in disturbing the verdict.

Affirmed.