## GOLDBERG v. UNITED STATES.
### No. 6756.

United States Court of Appeals
Fourth Circuit.

Argued June 1, 1954.

Decided June 14, 1954.

James S. Morrow, Jr., and John F. King, Baltimore, Md. (G. C. A. Anderson and Anderson, Barnes & Coe, Baltimore, Md., on the brief), for appellant.

Herbert H. Hubbard, Asst. U. S. Atty., Baltimore, Md. (George Cochran Doub, U. S. Atty., Baltimore, Md., on the brief), for appellee.

Before PARKER, Chief Judge, and SOPER and DOBIE, Circuit Judges.

DOBIE, Circuit Judge.

In the United States District Court for the District of Maryland, Alex Michael Goldberg was found guilty of receiving stolen goods under Title 18 U.S.C.A. § 641. He was sentenced to imprisonment for eight years, was fined Five Thousand Dollars, and has duly appealed to us.

The goods in question consisted of radio tubes, which were sold to Goldberg by one Goldstick. The number of these tubes ran well into the thousands, and over a considerable period of time, sales of the tubes by Goldstick to Goldberg averaged two or three times a month. Goldberg sold the tubes to various customers at a price which netted him a very substantial profit.

From appellant's brief we quote:

"It is undisputed that there was sufficient evidence from which a jury could find that the tubes purchased by defendant from Goldstick were unlawfully appropriated Government property. The only real issue is whether the defendant had knowledge of the fact that they were stolen goods or whether he purchased them believing that they had come legitimately into Goldstick's hands."

Counsel for Goldberg practically admitted before us that there was sufficient evidence to take to the jury the question of Goldberg's guilty knowledge. Apart from this admission, we think there was more than ample evidence to take this question to the jury. This question will be discussed later in this opinion, in connection with the contention of Goldberg that the District Judge's instruction as to Goldstick's testimony was erroneous and requires us to reverse the judgment below.

The most serious contention of Goldberg's counsel is that the admission in evidence, as Government's exhibits 21 and 22, of two unsworn, written statements of Goldstick constituted error prejudicial to Goldberg and alone requires us to reverse the judgment below. We think this contention is quite lacking in merit.

The first statement was given to the F. B. I. by Goldstick on October 9, 1952, shortly after his arrest. According to this statement, Goldstick had told the F.

B. I. that he was purchasing tubes from one Sy Simons, or his chauffeur and representative, one Lee or "Curly;" that he (Goldstick) believed these tubes to be legitimate surplus property which he resold to the defendant. Under questioning by the District Attorney on direct examination at the trial, Goldstick freely volunteered that his statement was false and that Sy Simons and his chauffeur were fictitious.

The second statement was given to the F. B. I. by Goldstick on December 2, 1952, upon advice of counsel, after he had decided to plead guilty in his own case. Counsel for Goldberg insist that there are two very material and vital variances between this second statement and Goldstick's testimony in court.

■ Many cases are cited by Goldberg's counsel in support of the rule that prior statements made by a witness are inadmissible to corroborate his testimony given on the stand. It is a good rule, indeed, that one about to give evidence on the stand should not be permitted, before he takes the stand, to make self-serving statements and then introduce these statements at the trial. Like most general rules, its practical application must be qualified by the circumstances of each case, and modern courts seem to manifest a tendency to restrict the rigid and inelastic application of the rule.

Quite in point here is Beaty v. United States, 203 F.2d 652, 656, in which Judge Parker, speaking for our Court, said:

"Another objection pressed upon us was that the court permitted evidence of a statement to Chief of Police Littlejohn made by the witness Brown as to his having discovered the defendant in the filling station with the large sum of money before him and of defendant's having said to him that he did not deposit the money in the bank because he did not want to pay $20 a hundred on it. The defendant, however, denied making the statement to Brown and at-

tempt was made on cross examination to impeach Brown's credibility. Brown's statement to Littlejohn made ante litem motam was competent, we think, for the purpose of corroborating Brown's testimony and was admitted solely for that purpose. See Goins v. United States, 4 Cir., 99 F.2d 147, 150; Dowdy v. United States, 4 Cir., 46 F.2d 417, 424; Boykin v. United States, 5 Cir., 11 F.2d 484, 486; Di Carlo v. United States, 2 Cir., 6 F. 2d 364, 366; note 140 A.L.R. 21, 154. Prior statements are not like ordinary hearsay. The one who made them is before the jury and is subject to cross examination about them, and the jury is perfectly well able to judge whether they do or do not corroborate him. To what extent they should be admitted for purposes of corroboration is a matter resting largely in the discretion of the trial judge and we do not think that the admission of the evidence here constituted an abuse of discretion or furnishes any ground for awarding a new trial."

■ Here the statements complained of had been introduced in evidence in a prior trial of the case and had been referred to in the opening statements of counsel in the trial from judgment in which this appeal is taken. Counsel for Goldberg admitted that they intended to cross-examine Goldstick with respect to statements contained in the first statement; and, in view of this, it was proper to admit the whole of the statement in evidence together with the subsequent statement relating to the same subject matter, and it was certainly not an abuse of the trial judge's discretion to permit the whole matter to be explored while the witness was on direct examination. Counsel for the prosecution offered to omit the portion of the second statement in which Goldstick stated that Goldberg knew that the tubes were stolen; but counsel for Goldberg took the position that this should be read along with the rest of the statement. We conclude that

the trial judge was acting well within the limits of his discretion in the way in which he handled the matter and that there was nothing in connection therewith of which Goldberg can justly complain.

A number of cases have held that when the corroborating statements are merely cumulative and where, apart from these statements, there is more than ample evidence to support the verdict of the jury (which we clearly think is true in the case before us), the admission of such statements does not constitute prejudicial error. See, Crawford v. United States, 91 U.S.App.D.C. 234, 198 F.2d 976; United States v. Corry, 2 Cir., 183 F.2d 155; Spevak v. United States, 4 Cir., 158 F.2d 594; Murphy v. United States, 6 Cir., 133 F.2d 622; Hilliard v. United States, 4 Cir., 121 F.2d 992; Workman v. United States, 4 Cir., 43 F.2d 44.

Appellant strenuously contends that reversible error was committed by the District Judge, when, in his charge, he put three questions to the jury and when he made a certain comment on Goldstick's testimony.

■ These three questions put by the Judge to the jury were: (1) "Was the witness Goldstick made the front man by Goldberg? Was Goldberg, as the Government claims, hiding behind him?" (2) "If he was not doing that, why didn't he, Goldberg, go direct to the Government, or be more open and above board in his transactions?" (3) "Why did he give cash to pay the boys, as they were called, in the way that he admitted?" While these questions were phrased in somewhat colloquial terms, each was germane to the question of Goldberg's guilt, and there was ample evidence which, if believed by the jury, would justify the jury in answering these questions adversely to Goldberg and in favor of the contentions of the Government.

These questions do not fall within the condemnation of the Supreme Court in the leading case of Bihn v. United States, 328 U.S. 633, 66 S.Ct. 1172, 90 L.Ed. 1485. There three Justices dissenting, the conviction was reversed, when the Trial Judge thus instructed the jury, 328 U.S. at pages 636–637, 66 S.Ct. at page 1174:

> " 'Who would have a motive to steal them? Did she take these stamps? You have a right to consider that. She is not charged with stealing, but with conspiracy to do all these things, and you have a right to consider whether she did steal them, on the question of intent. Did she steal them? Who did if she didn't? You are to decide that'."

There, Mr. Justice Douglas, 328 U.S. 637, 66 S.Ct. at page 1174, observed:

> "Or to put the matter another way, the instruction may be read as telling the jurors that if petitioner by her testimony had not convinced them that someone else had stolen the ration coupons she must have done so. So read, the instruction sounds more like a comment of a zealous prosecutor rather than an instruction by a judge who has special responsibilities for assuring fair trials of those accused of crime. See Quercia v. United States, 289 U.S. 466, 469, 53 S.Ct. 698, 77 L.Ed. 1321."

■ In reviewing the testimony of Goldstick, whom the District Judge characterized in his charge as a "co-defendant, or one who has been convicted or has pleaded guilty to a similar charge," the District Judge stated to the jury:

> "But I further instruct you that Goldstick's testimony is not, in and of itself, essential in order for the Government to prove that the accused has committed the crime as charged."

Not only did Goldberg's counsel fail to except to this portion of the District Judge's charge, but we are convinced that this part of the charge was entirely accurate.

We are convinced, after a careful study of the record, that Goldstick's evidence was not essential to the Government's case. Quite apart from Goldstick's testimony, there was more than ample evidence, to which we briefly advert, to justify the verdict of the jury.

We have the testimony of the witness Southard to the effect that appellant was told just before he commenced dealing with Goldstick that Goldstick could get him certain tubes cheaper, but that they would be stolen. The young girls who worked for Goldberg suspected the tubes were stolen and had conversations with him about them. Goldberg furnished Goldstick during these operations with fictitious billheads. There is the testimony of the witnesses Drayer and Frost, bank tellers, as to the unusual method of cashing the checks given by Goldberg in payment for the tubes supplied by Goldstick. There is the evidence of the prompt removal at Goldberg's store of all identifying labels on boxes bearing address stickers "Baltimore Signal Depot," while less meaningful labels such as "Epsey Manufacturing Company," were not removed. There is also the evidence of the prompt removal of individual boxes bearing Government contract numbers at Goldberg's store by his employees, and his admissions in both the first and second trials that he knew that the tubes were coming from the Baltimore Signal Depot.

Then, there are Goldberg's admissions made at the first trial and used at the second without objection that he was told that Goldstick was very close with someone and had to have cash to pay for the tubes. Highly suspicious was the extremely high profit of $27,000.00 made primarily, if not totally, out of the dealings with Goldstick when, in the prior year, Goldberg's profit was relatively small. Furthermore, the evidence shows that Goldberg could hardly have believed that these tubes were being bought at the Depot since he was on the mailing list and received a notice of all declarations of surplus from the Depot. He also spent great amounts of time in examining all tubes and other electronic equipment so offered for sale. The evidence is clear that at no time were any of the tubes of the type involved in this case declared surplus or excess by the Baltimore Signal Depot during the period of time involved.

Finally, the District Judge was very careful to tell the jury:

"You are the sole judges of the facts and anything that the Court may say about the facts, anything that it may have said, or any inferences that it may have drawn in the course of this trial, or any inferences it may appear to draw in the course of these instructions that relate to the facts, none of those are binding upon you."

For the reasons above assigned, the judgment of the District Court is affirmed.

Affirmed.