[Crim. No. 1544. Fourth Dist. Nov. 3, 1960.]

THE PEOPLE, Respondent, v. CLARENCE RUSSELL BASNETT, Appellant.

*Assigned by Chairman of Judicial Council.

Harold A. Bailin, under appointment by the District Court of Appeal, for Appellant.

No appearance for Respondent.

COUGHLIN, J.—The information filed against the defendant charged him in the first count thereof with the offense of assault with intent to commit murder, being a violation of section 217 of the Penal Code, and in the second count thereof with the offense of robbery, being a violation of section 211 of the Penal Code; and alleged four prior convictions. He was tried by a jury which rendered a verdict of guilty of assault with a deadly weapon as to the first count, being a lesser and included offense, and of robbery in the second degree as to the second count. The prior convictions were admitted. A motion for a new trial was denied and judgment of imprisonment in the state prison for each offense, the sentences to run concurrently, was pronounced. From the ''verdict and judgment rendered against him'' the defendant appeals.　■■■　No appeal lies from a verdict. (*People* v. *Ruiz,* 144 Cal. 251, 252 [77 P. 907]; *People* v. *Falk,* 113 Cal.App.2d 857, 858 [249 P.2d 60]), and the attempted appeal therefrom should be dismissed.

The defendant contends that the judgment should be reversed because, (1) the evidence is insufficient to sustain the verdict of guilty of either offense; (2) the verdicts which found the defendant guilty of assault with a deadly weapon and with robbery in the second degree are inherently contradictory; (3) the two offenses charged against him are based upon a single transaction and his conviction of both offenses cannot stand; and (4) errors were committed by the trial court in admitting gruesome photographs into evidence; in instructing the jury with respect to an alleged conflict in the evidence as to defendant's blood type; and in permitting the use of hearsay testimony.

The first three of these contentions involve primarily a determination respecting the sufficiency of the evidence and the application of the facts established thereby to established principles of law. As the evidence with respect to all of these contentions is interrelated, they will be considered together.

Basic to such a consideration is the rule that an appellate court " 'must assume in favor of the verdict the existence of every fact which the jury could have reasonably deduced from the evidence, and then determine whether such facts are sufficient to support the verdict' " (*People* v. *Newland,* 15 Cal.2d 678, 681 [104 P.2d 778]), and that a reversal thereof will not be granted unless it is "made clearly to appear that upon no hypothesis whatever is there sufficient substantial evidence to support the conclusion reached in the court below." (*People* v. *Tom Woo,* 181 Cal. 315, 326 [184 P. 389]; *cf. People* v. *Perkins,* 8 Cal.2d 502, 510 [66 P.2d 631].)

On the afternoon of July 24, 1959, the defendant and the victim of the offenses alleged in the information were riding in a Pontiac automobile which went off the highway near Yermo, California, and stuck in the sand. In the course of an attempt to free the automobile the victim, accompanied by the defendant, went to a pile of railroad ties located a short distance away, to get one of the ties and place it under the wheels of the car. While at this location the defendant struck the victim either with his fist or with a rock; knocked him down; took a wallet from his back pocket; and returned to the automobile where he changed his trousers, as those he was wearing were covered with blood. Thereupon he went back to the pile of railroad ties; saw the victim moving; again "belted him a time or two" with a rock; and then returned to the automobile. Eyewitnesses observed the defendant throwing objects at a man on the ground near the pile of railroad ties both before and after the defendant returned to and came back from the automobile, after changing his trousers; and one of them identified the objects as rocks. In the meantime, a truck driver had seen the defendant beside the Pontiac counting money in a wallet; stopped and talked to the eyewitnesses; and shortly thereafter reported the incident to the Highway Patrol. As a result a Highway Patrol officer went to the scene; saw the defendant; searched him and found the victim's wallet in his pants pocket. In the course of the ensuing investigation the officer went to the place where the victim was lying and observed that the latter had bruises on his face, a nose bleed and a severe cut on his head. Witnesses present at this time observed two rocks, which were taken into custody by a deputy sheriff, and later were examined by a forensic chemist. This examination disclosed the presence of human hair and human blood stains. Testimony at the trial indicated

114

that the blood stains were human blood of type "A," and that both the victim and the defendant had type "A" blood. In the victim's wallet, which was admitted into evidence, being the wallet taken from the defendant by the Highway Patrol officer, there was an army identification card which indicated that the victim's blood type was "B." This fact was discovered by the jury when, during the course of their deliberation, they examined the contents of the wallet. The jury returned to the courtroom; advised the trial judge of their findings; and asked to be instructed with respect to the situation thus developed. Thereupon the court advised them that "all you can do is to weigh the evidence that was adduced during the trial as against this piece of evidence contained in the wallet of the victim and resolve the conflict." An unusual circumstance in this case is that all of the testimony with respect to the blood type of the victim, including that disclosed by the identification card, as well as some of the testimony with respect to the blood type of the defendant, was hearsay. No objection is made to this testimony by either side upon this ground.

The defendant made several extrajudicial statements concerning the incidents under review. He told the Highway Patrol officer that the name of the victim which appeared upon papers in the wallet was a name used by him, the defendant, for identification purposes while he was in Los Angeles, apparently attempting to lead the officer to believe that the wallet was his, but, thereafter, he told a deputy sheriff that he had taken the wallet to rob the victim. On one occasion the defendant said that he did not know why he hit the victim; told another officer that he either "tried to kill" or "attempted to kill" the victim; at another time said he did not remember whether he hit the victim; and at the time of trial testified that the victim called him a vile name and thus provoked the assault, which was by his fists and not by a rock. The day after his arrest, when taken to the scene, the defendant said that he hit the victim on the head with a rock when the latter was bending over to pick up a railroad tie; removed his wallet; returned to the automobile where he changed his pants; noticed that the victim was in the sun; and went back to the place where he was lying and pushed his head into the shade. The latter statement is in conflict with the testimony of the eyewitnesses and the inferences properly deducible therefrom which support the conclusion that the defendant assaulted the victim on the second occasion.

Prior to the trial the victim died in an automobile accident.

Relying on the premise, based on the verdict of guilty of assault with a deadly weapon, that a rock as used in this case constituted a deadly weapon, the defendant contends that the evidence is insufficient to sustain the charge of robbery; that there is no showing that the wallet which was found on him was taken from the victim by force or fear (Pen. Code, § 211) ; that the only proof of force or fear consisted of evidence supporting the prosecution's theory that the defendant struck the victim on the head with a rock and then robbed him, which would constitute robbery in the first degree, i.e., while armed with a deadly weapon; that this theory was rejected by the jury in returning the verdict of second degree robbery thereby impliedly finding that the victim was not struck with a rock before the robbery; and that there is no other evidence of force or fear. The weakness of this argument lies in the assumption that the jury, by its verdict, rejected the prosecution's theory of the case. The verdict may have been the result of error or mercy in fixing the degree. If so, this is not something of which the defendant may complain. (*People* v. *Maroney,* 109 Cal. 277, 279 [41 P. 1097].)

 Evidence which supports a verdict of robbery of the first degree will be deemed adequate to support a verdict of robbery of the second degree. (*People* v. *Novo,* 12 Cal.App.2d 525, 528-529 [55 P.2d 915].) On the other hand, the jury may have entertained a reasonable doubt that the defendant struck the victim with a rock before taking his wallet, and may have based the degree of its robbery verdict on the testimony that the defendant assaulted the victim with his fists and upon inferences reasonably deducible from the evidence that this assault forced the victim to the ground; that the taking of the wallet followed immediately; and that the use of rocks occurred after the robbery had taken place.

In the same vein the defendant contends that the verdict on the robbery count, being in the second degree, implies a finding that the defendant was not at that time armed with a deadly weapon, i.e., a rock, and is contradictory to the finding implied in the verdict of guilty on the assault charge which determined that such assault was made with a deadly weapon. In weighing the testimony of the eyewitnesses to the incident occurring before the defendant returned to the automobile and changed his trousers, the jury was not required to find that the rock throwing episode which they described occurred before or as an incident of the robbery. As hereto-

fore noted, if the jury entertained a reasonable doubt with respect to the type of an assault which occurred preliminary to the robbery, they were entitled to accept the testimony of the defendant that he struck the victim with his fists upon this occasion; to conclude that such an assault resulted in the victim's nose bleed; constituted the force incident to the robbery and accounted for the blood on defendant's trousers; and to resolve its doubt in a finding that the defendant was not armed with a deadly weapon at the time the robbery was committed. ■ The jury was entitled to believe whatever evidence it deemed worthy of acceptance in the light of all the circumstances; to resolve any inconsistencies therein; and to draw whatever inferences reasonably deducible therefrom it deemed proper. (*Hamilton* v. *Pacific Electric Ry. Co.*, 12 Cal. 2d 598, 602 [86 P.2d 829]; *People* v. *Treggs*, 171 Cal.App.2d 537, 545 [341 P.2d 342].) ■ By the same rule, it was within the scope of the jury's prerogative to conclude that an assault after the commission of the robbery had been proven beyond a reasonable doubt, relying upon the testimony of the eyewitnesses that a rock throwing episode occurred after the defendant changed his trousers and came back from the automobile, at which time the defendant "belted" the victim; which was corroborated by evidence showing that the victim had a gash upon his head, and proving the presence of human hair and blood on rocks found at the scene. ■ Even if it be assumed that the jury accepted the evidence which supports the conclusion that the defendant struck the victim with a rock both prior to and after the trouser change at the automobile, the verdicts are not inconsistent as they relate to different times and different instances of criminal conduct. The two verdicts are not based on the same incident; did not rely on the same evidence; refer to two different offenses; and, therefore, cannot be inconsistent. Each verdict stands on its own merits. (*People* v. *Muza,* 178 Cal.App.2d 901, 905 [3 Cal.Rptr. 395].)

This conclusion foreshadows our determination respecting the defendant's contention that the two offenses charged against him arose out of the same transaction and the verdicts thereon resulted in dual convictions for the commission of a single offense. ■ A defendant who has engaged in a course of conduct constituting an indivisible criminal transaction may be convicted of and punished for only one offense, even though such course of conduct fits the definition of several different offenses. (Pen. Code, § 654; *People* v. *Brown,*

49 Cal.2d 577, 590 [320 P.2d 5]; *People* v. *Logan,* 41 Cal.2d 279, 290 [260 P.2d 20].)

"Where the question is whether a transaction is divisible or indivisible, each case must be resolved on its facts." (*People* v. *Brown,* 49 Cal.2d 577, 591 [320 P.2d 5].)

 Under the facts in this case the jury was entitled to find that the charge of assault with a deadly weapon, of which it found the defendant guilty, was committed by him after the offense of robbery had been completed. Under these circumstances two criminal transactions were involved; two separate, divisible offenses were committed. (*In re Chapman,* 43 Cal.2d 385, 389 [273 P.2d 817].)

 The defendant challenges the sufficiency of the evidence to sustain his conviction of assault with a deadly weapon upon the ground that the blood stains on the rocks introduced as exhibits were established to be of type "A" blood whereas the victim's army identification card indicated that his blood type was "B." The evidence also showed that a report from the hospital where the victim was treated after the assault indicated that his blood was type "A." The testimony with respect to the hospital record and the report contained in the identification card both constituted hearsay. Whether the recent report from the hospital or the report contained in the identification cards should be accepted, or whether both should be rejected, were matters of fact for the jury to determine. If the hospital record was accepted, the victim's blood type, as well as the defendant's, coincided with that obtained from the rock stains; if the identification card evidence was accepted, the victim's blood type did not so coincide; if both records were rejected, there is no evidence that the blood on the rocks was or was not of the same type as that of the victim. A finding in accord with either of the foregoing suggestions would not be in conflict with a finding by the jury that the rocks in question were used to assault the victim. Independent of any identification of the type of blood composing the stains on these rocks, there was adequate evidence from which the jury could have concluded that the victim was assaulted by the rocks introduced into evidence. Of particular note is the fact that some of the hairs upon these rocks were live hairs, as distinguished from dead or fallen hairs, which was proven by the condition of their roots, indicating that they had been gouged out by the rocks; and the further fact that other hairs were broken, indicating that they had been crushed by the rocks. The cir-

118

cumstances justify the inference that the hairs upon the rocks were those of the victim.

The defendant claims that the admission into evidence of three colored transparencies and one black and white photograph, allegedly of "a gory and gruesome nature," constituted prejudicial error. Two of these exhibits show the victim's head while he was at the hospital; it is clean-shaven; and thus enables the viewer to better ascertain the size, type and location of three gashes thereon. Another of the exhibits pictures the right side of the victim's head, face and torso; shows the extent and nature of a black eye and bloody ear; and portrays with accuracy the number, kind and location of numerous cuts and bruises.

"When allegedly gruesome photographs are presented, the trial court must decide whether their probative value outweighs their probable prejudicial effect." (*People* v. *Love*, 53 Cal.2d 843, 852 [350 P.2d 705]; *People* v. *Carter*, 48 Cal.2d 737, 751 [312 P.2d 665].)

A decision upon such a matter lies within the sound legal discretion of the trial court. (*People* v. *Atchley*, 53 Cal.2d 160, 168 [346 P.2d 764].) The extent, location and nature of the wounds received by the victim in this case were material to a decision respecting the amount of force used by the defendant in committing the assault. One of the charges against him was that of assault with intent to commit murder. Evidence showing the seriousness of the results flowing from his assault was pertinent to a decision upon the issue of his intent. Moreover, in considering whether or not the defendant was guilty of the offense of assault with a deadly weapon, one of the issues presented was whether the rocks as used by him constituted such a weapon.

"It has long been the established rule that in determining whether an instrument, not inherently deadly or dangerous, assumes these characteristics, recourse may be had to the nature of the weapon, the manner of its use, the location on the body of the injuries inflicted and the extent of such injuries." (*People* v. *Russell*, 59 Cal.App.2d 660, 665 [139 P.2d 661].)

The photographs in question were material to a decision of the foregoing issues. They were more unpleasant than "gory and gruesome." In admitting them the trial court did not abuse its discretion.

The remaining photograph shows the victim borne on a hospital cart, surrounded by hospital attendants, ap-

parently being prepared for surgery. This photograph was not gory or gruesome; was neither harmful to the defendant nor beneficial to the prosecution; added nothing; was immaterial to a decision of any issue presented and, for this reason, was admitted erroneously, but any error in its admission was not prejudicial to the defendant's case. Its effect upon the result was inconsequential.

 The defendant also objects to the proceeding resulting in an instruction by the trial court advising the jury that the testimony respecting the report from the hospital that the victim's blood was type "A" and the recital on his army identification card that his blood was type "B" created a conflict which they must decide. It is argued that the treatment by the trial court of the problem presented when the jury returned to the courtroom, after noting the type "B" blood information contained in the identification card, confused the jury, with the probability that "a determination was thereby made contrary to indisputable scientific fact." In arriving at this conclusion reliance is placed on the claim that a person's blood type can be scientifically determined upon proper testing; does not change; and is fixed by hereditary factors. Accepting these claims as true, it is apparent at once that either the information obtained from the hospital or that contained on the identification card was incorrect. This created a conflict in the evidence. Both reports were subject to errors incident to improper testing, to the accurate recording of the results of whatever test was made, and to the correct transmission of this information, either to the person testifying with respect to the hospital record or upon the identification card. There was no request for any additional instructions to the jury or for the presentation of any additional evidence. The declaration by the trial court that the evidence presented a conflict which the jury was required to decide was proper. As heretofore noted, whether the victim's blood was type "A" or type "B" was of little significance. The existence of live and crushed hairs upon the rocks; the admissions of the defendant and the testimony of the eyewitnesses are of far greater significance. The charge of confusion is not supported by the evidence.

Over objection, the court admitted into evidence a handwritten statement made by one of the eyewitnesses on the night after the robbery and assault occurred. The matters written in this statement were substantially the same as those testified to by the witness. On cross-examination of this wit-

ness defense counsel attempted to establish that his "recollection as to many of the matters relating to what occurred there at the scene were indefinite . . .; and on several occasions he indicated that he wasn't sure about the testimony he had previously given." The inquiry was extended to an examination as to whether or not the witness had been coached. In the course of this cross-examination it was developed that the witness had made the written statement in question. Thereupon, in the judge's chambers, counsel for defendant demanded and received this statement; read the same; and obtained a typewritten copy thereof. Upon further cross-examination of the witness he was confronted with this copy and, in response to questions concerning the same, testified that it appeared to be a substantially correct transcription of the handwritten statement made by him; the copy was marked as an exhibit for identification; the prosecution offered the copy in evidence; the defendant's objection that it was not the best evidence was sustained; and the witness, pursuant to further inquiry by defense counsel, confirmed the fact that there was nothing in the statement which purported to relate anything which happened after the highway patrolman arrived at the scene. Thereafter, at the request of the district attorney, but over objection of the defendant, the original written statement was admitted into evidence. The defendant contends that this was error; that the statement was hearsay; and should not have been admitted. The prosecution claims the statement was admissible under the rule which permits a showing of prior consistent statements when the testimony of a witness is assailed as being of recent fabrication (*People* v. *Walsh*, 47 Cal.2d 36, 41 [301 P.2d 247]; *People* v. *Carter*, 48 Cal.2d 737, 749 [312 P.2d 665]), as where it is the product of improper motives of interest, or improper influences. (*People* v. *Kynette*, 15 Cal.2d 731, 753 [104 P.2d 794].) ▮ Under these circumstances such evidence is "admitted, not to prove the facts of the case, but as tending to show that the witness has not been controlled by motives of interest, and that he has not fabricated something for the purposes of the case." (*People* v. *Kynette*, 15 Cal.2d 731, 754 [104 P.2d 794].) In the case at bar, the credibility of the witness was attacked upon the ground that his memory was faulty. Implicit in this attack was the claim that the testimony given by him was the result of fabrication. If a witness does not remember what has transpired but nevertheless testifies respecting the same, it may be argued that the testimony

given by him has been fabricated. Cross-examination seeking to prove that his memory is faulty is based on an advocated belief that his testimony is untrue and carries the implication that it may be the result of fabrication. ▮▮▮▮ For the purposes under consideration, a charge of recent fabrication may appear by implication from the questions directed to the witness as well as from an expressed statement to this effect. (*People* v. *Walsh, supra,* 47 Cal.2d 36, 43 [301 P.2d 247] ; *People* v. *Bias,* 170 Cal.App.2d 502, 510 [339 P.2d 204].) ▮▮▮▮ To be admissible the prior consistent statement should precede the cause of the alleged fabrication. (*People* v. *Kynette, supra,* 15 Cal.2d 731, 754 [104 P.2d 794] ; *Mason* v. *Vestal,* 88 Cal. 396, 398 [26 P. 213, 22 Am.St.Rep. 310] ; *Barkly* v. *Copeland,* 74 Cal. 1, 5 [15 P. 307, 5 Am.St.Rep. 413].) ▮▮▮ When the cause for fabrication is faulty memory and the prior statement was made at a time when that cause did not exist, the requirements of the rule are met. In the case at bar the prior consistent statement was made on the evening of the day the incidents which were the subject of the witness' testimony occurred. Also of note is the insinuation that the witness was coached, which implied that his testimony was the product of improper influences and furnished an additional implication of claimed fabrication. ▮▮▮▮ At any rate, no miscarriage of justice resulted even if admission of the written statement was error. It contained no information not already before the court through the testimony of the eyewitness. The fact of its existence was brought to the attention of the jury by the defendant. After an examination of the entire record, including the evidence, we are of the opinion that it is not reasonably probable that a result more favorable to the defendant would have been reached if his objection to the written statement had been sustained. (*People* v. *Watson,* 46 Cal.2d 818, 836 [299 P.2d 243].)

The appeal from the verdict is dismissed. The judgment is affirmed.

Griffin, P. J., and Shepard, J., concurred.

A petition for a rehearing was denied November 22, 1960, and appellant's petition for a hearing by the Supreme Court was denied December 28, 1960.