THE PEOPLE OF PUERTO RICO, Plaintiff and Appellee, v. FIDEL PACHECO ASENCIO, Defendant and Appellant.

No. 16666.   Decided September 20, 1961.

506

*Francisco Coll Moya* and *Santos P. Amadeo* for defendant-appellant. *J. B. Fernández Badillo, Attorney General of Puerto Rico,* and *Carlos G. Látimer, Assistant Attorney General,* for appellee.

Division composed of Mr. Justice Hernández Matos, as Chief Judge of Division, and Mr. Justice Blanco Lugo and Mr. Justice Dávila.

MR. JUSTICE BLANCO LUGO delivered the opinion of the Court.

On January 25, 1957, the district attorney of San Juan filed four informations against appellant Fidel Pacheco Asencio, charging him with the commission of the crimes of first-degree murder, attempt to commit murder, and illegal carrying and possession of weapons.

The evidence for the prosecution established that on December 24, 1956, Claudio González and Jesús Collazo visited an establishment owned by the defendant situated in Trujillo Alto, and after taking several glasses of liquor González refused to pay and uttered obscene and indecorous words in connection with the appellant and left the place. Some time later, while Collazo was in the company of a friend in front of the recreation park of that town, the defendant arrived and invited them to get in the vehicle which he was driving, which they did. The defendant drove to the road leading to the ward of Carraízo and, after rebuking Collazo for having slandered his wife, stopped, took out a revolver and fired several shots at him causing injuries on the chest and left .

thigh. The injured party fled. The defendant returned to town where he saw González walking along the sidewalk; he called him and thereupon fired at him twice, causing him two perforations in a lung which produced his death. In other words, the tragic balance of appellant's acts on Christmas Eve in 1956 was one death and a seriously injured party.

The defendant's evidence sought to establish self defense, in support of which he offered oral testimony to show that the deceased had threatened him with a knife in his establishment, and that later, when they ran into each other in town, he had attempted to injure him.

He was found guilty of all the crimes charged, and on appeal he assigns the commission of six errors.

1. He challenges the sufficiency of the information for failure to allege that the deceased's death occurred within one year and one day after inflicting the injuries which caused the death. (Section 205 of the Penal Code, 33 L.P.R.A. § 637.) The information does not in fact contain a specific allegation on the point, either using the proverbial words of the statute or in some other way.[1]

The appellant concedes that in *People* v. *Ortiz*, 64 P.R.R. 239 (1944), we held that an information charging the defendant that "then and there on or about the 24th day of August, 1941 ... killed a human being ... attacking and assaulting her with a stone, producing a ... contusion ... as a result of which ... she died," is a sufficient allegation that the death occurred within a year and a day after the alleged assault. The information filed by the district attorney in

---

[1] The information filed reads as follows:

"The said defendant Fidel Pacheco Asencio, on or about December 24, 1956, and in Trujillo Alto, which is part of the Superior Court of Puerto Rico, San Juan Part, unlawfully, voluntarily, and criminally, with premeditated malice, deliberation, with intent and decided and firm purpose of killing, showing that he has a perverted and malignant heart, killed illegally a human being, Claudio González Guadalupe, whom he attacked and assaulted with a revolver, producing serious bullet injuries which caused the death of Claudio González Guadalupe."

the instant case, which is copied in the footnote, follows literally this text, with the exception of the reference to the manner in which the cause of the death was produced. This would be sufficient to dispose of this assignment were it not for the fact that we are asked to re-examine the doctrine announced in the light of a new issue which was not considered prior hereto.

The defendant argues that, in accordance with the uniform rule of construction to the effect that when a statute in force in another state is adopted it is presumed that the lawmaker has also adopted the construction put upon its provisions by the courts of first instance of the original state up to the date of adoption, *People* v. *Puente*, 14 P.R.R. 109 (1908), and *People* v. *Colón*, 15 P.R.R. 663 (1909), this Court is bound by the interpretative authorities of California on the necessity of incorporating a specific allegation on the time of the death. Our attention is invited to the decisions in *People* v. *Aro*, 6 Cal. 207 (1856) ; *People* v. *Kelly*, 6 Cal. 210 (1856) ; *People* v. *Cox*, 9 Cal. 32 (1858) ; *People* v. *Wallace*, 9 Cal. 30 (1858) ; *People* v. *Stevenson*, 9 Cal. 273 (1858) ; and *People* v. *Coleman*, 10 Cal. 334 (1858), in all of which it was said that the time of the death must be stated in order that the court may determine whether it was the direct result of the infliction. This was the common-law rule. 2 Warren, Homicide 77–78, § 177 (1938 ed.).

Appellant is not correct. (a) The centennary rule which we have stated had already been abandoned by 1872 in the California state, that is, prior to the approval of the Penal Code of that year which served as a model to our Legislative Assembly. In *People* v. *Murphy*, 39 Cal. 52 (1870), objection to an indictment for murder [2] was based, among other reasons, on the absence of an allegation on the specific time of the death. In rejecting this objection, it was said: "The

---

[2] The information was couched in similar or identical terms as that of the instant case.

sufficiency of the indictment is not to be tested by the rules of common law ... The requirement that it must appear that the party died within a year and a day, is a rule of evidence merely. Unless the party dies within that time the prosecution will not be permitted to show that he died of the injury received." See *People* v. *Clark*, 235 P.2d 56 (Cal. 1951); XV Tul. L. Rev. 306; 12 So. Cal. L. Rev. 19 (1938); *cf. Elliot* v. *Mills*, 335 P.2d 1104 (1959). (b) Even though the prevailing rule at the time of the approval of our Penal Code were construed as invoked by the appellant, we would not be constrained to follow it, since, as stated in *People* v. *Matos, ante*, p. 323, citing *People* v. *Ramos*, 18 P.R.R. 954, 962 (1912), "the rule requiring courts to follow the construction put upon a statute by the Supreme Court of the State from which the legislature may have borrowed it is a general rule and is not of universal application but is subject to many exceptions and limitations." (c) Lastly, from the information, as drawn up, it appears that the victim died the same day of the assault, and, if this were not sufficient, since it is alleged that the assault occurred on December 24, 1956 and the information was filed 32 days later, on January 25, 1957, obviously, the requirement, if necessary, would have been met.

2. Four errors are aimed at challenging the instructions which the court of instance transmitted to the jury. The instructions challenged are the following:

*a*—"In using intentionally a dangerous weapon and killing a person, the inference to be drawn prima facie is that the defendant is guilty of murder. (Tr. Ev. 7.)

*b*—"In murder cases, as in other criminal actions, the corpus delicti must be established as an essential element of guilt. The fact of the death and the cause which produces it are the only elements which constitute the corpus delicti. (Tr. Ev. 9.)

*c*—"The crime of assault with intent to commit murder is but a crime of frustrated murder, that is, a murder which is not consumated because the person object of the assault does not die. In other words, it is a case in which the defendant has

resorted to all the elements and all the requirements necessary to produce the crime, and yet the crime has not been produced for causes foreign to his will. The intent is an essential element of the crime of assault with intent to commit murder, and in order that such crime may exist it is necessary that the assault be carried out with premeditated intent to kill.

*d*—"And, in the third place, it is necessary that the person accused has not had any other means of eluding the assault other than the killing of his adversary, that is, that no other reasonable and probable means of avoiding that death was within his reach. It is proper to charge you, ladies and gentlemen of the jury, that a person who is assaulted by another is not bound to flee, hide, or run through the streets and roads in order to avoid his aggressor."

■■■ At the close of its lengthy instructions to the jury the court asked the district attorney and the defense whether they wished to transmit any instruction to the triers of fact. Both answered in the negative. Nor was any objection then raised to those already transmitted. (Tr. Ev. 47.) We have repeatedly held that, if when finishing its instructions to the jury the court asks the defense attorney whether he wishes any special instruction and he answers in the negative and does not object to any of the instructions transmitted, not even in a general way, such conduct constitutes a waiver of any error which does not impair the fundamental rights of the defendant. *People* v. *Negrón*, 79 P.R.R. 279, 284 (1956); *People* v. *Lampón*, 78 P.R.R. 102 (1955); *People* v. *Muñiz*, 73 P.R.R. 298 (1952); *People* v. *Feliciano*, 70 P.R.R. 834 (1950). This would be sufficient to dispose of the errors assigned. We will, however, consider them, though briefly, in the order in which they have been assigned.

*a*—The instruction challenged concerning the inference of guilt of the crime of murder by the intentional use of a dangerous weapon, was taken literally from the text of the opinion delivered in 1926 in *People* v. *Carrión*, 35 P.R.R. 828, 829 (1926). Furthermore, in *People* v. *Román*, 70 P.R.R. 48, 52 (1949), we said: "The elements of premeditation and

deliberation, essential to a conviction of murder in the first degree, may be inferred from the manner in which a deadly weapon is used or perhaps from the mere use thereof, *People v. Alegría*, 36 P.R.R. 355 ...'' The appellant contends that this rule is not applicable to the instant case because it is a case of self-defense. However, he overlooks the fact that the jury did not place credence on his version of the facts which tended to establish such defense, and that anyway the judge gave proper instructions on the meaning and scope of this defense as to defendant's responsibility. (See pp. 43-46 of the instructions.) In this connection, the instructions should be weighed as a whole and not isolatedly. Reasonably taken together, they can not lead to any other conclusion but that, independently of the inference which may be drawn from the use of a firearm, self-defense, if the evidence to that effect is believed, exempts from criminal responsibility.

*b*—The defendant alleges that the instruction on the corpus delicti was erroneous because the jury was not instructed that the State is bound to prove it "beyond a reasonable doubt." He does not invoke any authority in support of this assertion. In the instructions, the trial judge clearly stated that "the defendant's guilt must be proved beyond a reasonable doubt. And when that doubt exists, he should be acquitted." (Tr. Ev. 41.) He then went on to explain in detail what constitutes a reasonable doubt (tr. ev. 49), and at the close he again said that in case of reasonable and well-founded doubt the defendant had to be exonerated. It is to be noted that in the instruction on corpus delicti the court said that the same must be established as "an essential element of guilt," and then complements the rule by saying that guilt must be established beyond a reasonable doubt. We ratify that the instructions must be considered in relation to each other rather than isolatedly. *People v. Negrón*, 79 P.R.R. 279, 284 (1956); *People v. López*, 77 P.R.R. 573 (1954).

The statute expressly provides that "No person can be convicted of murder or manslaughter unless the death of the person alleged to have been killed, and the fact of the killing by the defendant as alleged, are established as independents acts; *the former by direct proof* and the latter beyond a reasonable doubt." (See § 206 of the Penal Code, 33 L.P.R.A. § 638.) See *People* v. *Busigó,* 78 P.R.R. 153 (1955) ; *People* v. *Rivera,* 66 P.R.R. 207 (1946) ; 3 Underhill, Criminal Evidence 1494, § 630 (1957 ed.).

Considering the instructions as a whole and not an isolated phrase taken therefrom, the error assigned was not committed.

*c*—The appellant complains that the instruction bearing on the crime of assault to commit murder is fatally defective, since no reference is made therein to the necessity that there be an express intent to kill, in contradistinction to the criminal intent which is the element of most crimes. A brief reading of the instructions shows that this error was not committed. The court charged the jury properly that "the intent is an essential element of the crime of assault with intent to commit murder, and in order that such crime may exist it is necessary that the assault be carried out *with the premeditated intent to kill." People* v. *Palóu,* 80 P.R.R. 351, 374-76 (1958) ; *People* v. *District Court and Colón, Int.,* 74 P.R.R. 783, 799 (1953) ; *People* v. *Gómez,* 14 P.R.R. 124, 129 (1908).

*d*—The instruction on self-defense transcribed above conforms to law, and we do not believe, as argued by the appellant, that the jury could have received the impression that the defendant was necessarily bound to flee. The court first stated the rule in general terms—absence of another means to evade the assault or aggression inflicted—and then elaborated further in a smooth and clear way that under such circumstances "he is not bound to flee, hide, or run through the streets and roads in order to avoid his aggressor." *People*

v. *Barrios*, 23 P.R.R. 772 (1916) ; *cf. People* v. *León*, 53 P.R.R. 408 (1938) ; *People* v. *Chico*, 45 P.R.R. 486 (1933).

3. At the close of the examination of Gaspar Guadalupe Ayala, one of the witnesses for the prosecution, the defense requested to be delivered the sworn statement given by the latter in the course of the preliminary investigation "in order to impeach it." The district attorney stated that he did not object to its production, "but once it is used, this statement should be transmitted to the jury." The defense in turn protested that the district attorney "can not compel me to admit anything."

In the course of the cross-examination the defense attorney read several portions of the sworn statement given by the witness the day after the occurrence, for the purpose of proving contradictions between the statements contained therein and his oral testimony given at the trial.[3] At the close of the oral testimony the district attorney offered in evidence the written sworn statement which the defense had used to impeach the witness. After arguing the point, and over the objection of the defense, the court admitted it,[4] and in its ruling said: "... that statement will be transmitted to you only for the purpose that you may read it in connection with the statement which the witness gave and swore to here, in open court, in your presence. And you may determine, in the light of that statement, the scope and weight of that statement which he has given here, and the credit which that statement which he has given here deserves in your opinion, in the light of that statement. If you believe that that statement constitutes a full or partial denial of what the witness

---

[3] The alleged inconsistencies referred to the following facts: (1) whether the witness had met the deceased on the day of the occurrence in the house of some friends or in the business of one Juan Francisco; (2) whether the witness chased the victim of his own volition or at the suggestion of those friends; (3) whether the vehicle in which the defendant was riding had stopped on the street or was moving slowly and then stopped; (4) whether the deceased responded or not to defendant's call.

[4] We have been unable to examine the statement. It was not included as part of the transcript of evidence filed in the petition for appeal.

has testified here, you may place the credence which that statement deserves. If you believe that that statement given by the witness is a reflection of his own declarations in the light of the recent events, you may compare it in order that you may give it the credit which the statement given by him deserves, in the light of that statement. You may also take into consideration, as the court will instruct you in detail, that the contradictions in the statement which he gave here today as compared with the previous one, if they do not have the scope of an essential contradiction, you may, apart from that, give the credit you may wish to the witness' statement. On the other hand, if on the contrary you believe that the statement given here contains elements of such a substantial nature as to controvert the statement, then you should consider with suspicion and caution that witness' statement given in open court." It then ratified that the admission was for the sole purpose of ascertaining "the scope and weight of the credibility of the statement given here (in court) by the witness. Because the defense has used at length that statement, and the jury should have *the entire picture* in order to determine whether what the witness said here deserves credit and what degree of credit it may deserve." (Tr. Ev. 184-85.)

There is no question that there existed in the instant case the circumstances which we established for the prosecution to deliver to the defense the witnesses' sworn statements given in the course of the preliminary investigation, *People* v. *Ribas, ante,* p. 371; *People* v. *Aponte, ante,* p. 491, and that the defense used that statement, at least portions of it, to challenge the witness' testimony given at the trial because the latter allegedly had made previous inconsistent statements.

■■ The general rule is that the oral testimony given by a witness at the trial may not be corroborated by the production in evidence of a sworn statement given by him on a previous occasion. This proof is unnecessary and hardly of

any value since if the testimony is improbable or untrust-worthy the previous statement does not add greater credit or worthiness. It prevails in criminal actions, *Commonwealth v. Freedman*, 165 A.2d 678, 682 (Pa. 1960) ; *Evans v. State*, 105 So.2d 831 (Ala. 1958) ; *Commonwealth v. Trignani*, 138 A.2d 215 (Pa. 1958) ; *Goldberg v. United States*, 213 F.2d 734 (C.A. 4, 1954) ; *Weaver v. State*, 31 So.2d 593 (Ala. 1947) ; 4 Wigmore, Evidence 197, § 1126 *et seq.* (3d ed.) ; as well as civil actions, *Boutillette v. Robbins*, 154 N.E.2d 620 (Mass. 1958) ; *Biela v. Messner*, 151 N.E.2d 406 (Ill. 1958) ; *Thomas v. Ganeger*, 78 A.2d 539 (Conn. 1951). Several ex-ceptions have been recognized to this rule and, among them, the presentation of the previous sworn statement is permit-ted (a) when the witness' credibility has been impeached by prior inconsistent statements, *Burns v. Clayton*, 117 S.E.2d 300, 310 (S.C. 1960) ; *McElhattan v. St. Louis Public Service Company*, 309 S.W.2d 591 (Mo. 1958) ; *State v. Murley*, 212 P.2d 801 (Wash. 1950) ; *State v. Dawson*, 44 S.E.2d 527 (N.C. 1947) ; (b) attempts have been made to establish, ex-pressly or implicitly, that the testimony given by the witness at the trial is of recent fabrication and is the product of other motives or a special interest in the outcome of the case, *People v. Barnett*, 8 Cal. Rptr. 804 (1960) ; *People v. Green*, 4 Cal. Rptr. 304 (1960) ; *Van Gallon v. State*, 50 So.2d 882 (Fla. 1951) ; *State v. Sullivan*, 130 A.2d 610 (N.J. 1957) ; *Moore v. Leventhal*, 104 N.E.2d 892 (N.Y. 1952) ; *Cohen v. Covelli*, 94 N.Y.S.2d 782 (1950) ; (c) portions of the sworn statement have been used for the purpose of impeaching the witness, in which case it is permissible to present the complete statement in order that the portions quoted may be considered within the complete statement, *United States v. Lev*, 276 F.2d 605, 608 (C.A. 2, 1960) ; *Goldberg v. United States*, 213 F.2d 734 (C.A. 4, 1954) ; *cf.* 7 Wigmore, *op. cit.*, § 2113.

██ There is no doubt that under these circumstances, in which by exception it is permissible to offer the previous state-

ments, the only purpose for which they are admissible is to rehabilitate the witness' credibility or to show that his testimony given at the trial is not of recent "fabrication", since the witness made identical declarations on a previous occasion, generally contemporaneous with the preliminary investigation. They are not admissible, however, for the purpose of establishing the veracity of their contents, since obviously they constitute hearsay evidence because the adverse party did not have an opportunity to cross-examine. *People* v. *Green*, 4 Cal. Rptr. 304 (1960) ; *State* v. *Sullivan*, 130 A.2d 610 (N.J. 1957) ; *Commonwealth* v. *Calderbank*, 55 A.2d 422, 424 (Pa. 1947). Even then the admission of the prior statement rests on the sound discretion of the judge, and in the exercise thereof there should be considered, among other things, the character and probable effect of the witness' impeachment. *Commonwealth* v. *Trignani*, 138 A.2d 215, 220 (Pa. 1958) ; *Beaty* v. *United States*, 203 F.2d 652, 656 (C.A. 4, 1953).

Considering all the attendant circumstances—the reading by the defense attorney before the jury of isolated questions and answers in the prior sworn statement for the purpose of establishing contradictions—we believe that the court of instance, in the exercise of its discretion, did not err in admitting, at the district attorney's request, the entire statement. Moreover, the court instructed the jury on the purpose of its admission. Lastly, since the testimony of the witness whose prior written statement admittedly constituted cumulative evidence and there is independent and abundant evidence to support the verdict, the defendant has not been fatally prejudiced by the admission of witness Guadalupe's sworn statement. *Goldberg* v. *United States*, 213 F.2d 734, 737 (C.A. 4, 1954).

None of the errors assigned having been committed, the judgment rendered by the Superior Court, San Juan Part, on October 6, 1958, will be affirmed.