Filed 10/7/15  P. v. Jimenez CA5

<u>**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**</u>

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>JUAN VASQUEZ JIMENEZ,<br><br>    Defendant and Appellant. | F068128<br><br>(Super. Ct. No. F12906039)<br><br>**OPINION** |

<u>**THE COURT**</u>*

APPEAL from a judgment of the Superior Court of Fresno County.  Denise Lee Whitehead, Judge.

Allen G. Weinburg, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Michael P. Farrell, Assistant Attorney General, Eric L. Christoffersen and Sally Espinoza, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

---

*        Before Poochigian, Acting P. J., Detjen, J. and Peña, J.

# INTRODUCTION

Appellant Juan Vasquez Jimenez[1] was found guilty of second degree robbery, assault by means of force likely to produce great bodily injury, and assault with intent to commit rape. The victim of all three offenses was Briana G. (Briana). Jimenez contends (1) the prosecutor committed misconduct in closing argument; (2) Penal Code section 654[2] bars imposition of concurrent terms for the two assault convictions; and (3) the abstract of judgment contains a clerical error. We direct that the clerical error in the abstract of judgment be corrected, and in all other respects we affirm the judgment.

# FACTUAL AND PROCEDURAL SUMMARY

On the evening of August 9, 2012, Henry Fujikawa drove his friend Briana to the Ambassador Inn. Briana asked Fujikawa to wait for her, so he remained in the area. Sometime after midnight, Briana was attempting to obtain money in exchange for sexual acts and was walking through the parking lot of a nearby McDonald's restaurant when Jimenez whistled and called her over.

Jimenez was wearing blue jeans, blue Vans shoes, a gray tank top, and had a gray shirt draped over his shoulders; he spoke with a heavy Spanish accent. Briana described Jimenez as a Hispanic male in his early 20's, about five feet six inches tall, and weighing around 150 pounds. There was something about Jimenez that caused Briana not to trust him; she told him so and walked away.

Jimenez approached Briana and the two began conversing. After some negotiating, Briana agreed to orally copulate Jimenez in exchange for $20. The two then walked to a secluded area behind the Ambassador Inn. Jimenez gave Briana the $20,

---

[1] Throughout the record and in the abstract of judgment, appellant's middle name is spelled "Vasquez." Appellant's signature, however, in one instance, reflects the spelling of his middle name to be "Vazquez."

[2] All further statutory references are to the Penal Code unless otherwise noted.

which she placed in her bra. He then asked Briana to pull down her pants; she refused because they had not agreed to that. Jimenez attempted to persuade Briana to do as he asked and then became mad when she would not comply; Briana told Jimenez she would pull down her pants if he paid her more money. Jimenez showed Briana a $100 bill that was in his wallet.

Briana glanced down at her cell phone. As she did so, Jimenez "socked" her in her left cheek and Briana fell to the ground. While she lay on her back in the dirt, Jimenez sat on top of her and began hitting her face with his fists. Briana was screaming for him to stop. During the struggle, Jimenez took Briana's cell phone and placed it behind him; he also removed the $20 from her bra.

Jimenez pulled down his pants, withdrew his penis, and attempted to force his penis into Briana's mouth. Briana struggled, but Jimenez's penis partially entered her mouth. At some point, Jimenez fell to the side and Briana started to stand up. When Jimenez saw this, he began kicking Briana's head and upper body. Briana estimated Jimenez kicked her about eight times. Briana was bleeding and had blood "all over" her shirt. (RT 132)!

Eventually, Jimenez stopped and ran toward the Ambassador Inn; Briana ran after him, screaming. Briana ran to Fujikawa's car, which was parked on the corner near the Ambassador Inn. Fujikawa noticed Briana had a bloody mouth, bloody nose, and a puffy right cheek. Briana was crying and was somewhat hysterical.

Briana asked Fujikawa to pursue the man she had identified as her attacker; the man ran toward a Kentucky Fried Chicken (KFC) restaurant. They lost sight of Jimenez, and Briana used Fujikawa's cell phone to call 911. Briana and Fujikawa waited for the police in the parking lot of the KFC restaurant. Officers arrived less than five minutes after the 911 call.

Police officers found Jimenez lying on his side in a nearby bush; the sprinklers were on and were hitting the bush. When one of the officers ordered Jimenez to come

3.

out of the bushes, there was no response. The officer reached for Jimenez's hands, but Jimenez pulled away and placed his hands under his body. Another officer came to assist and the two officers managed to extract Jimenez from the bushes; the water hitting Jimenez from the sprinklers made it more difficult to "get a grip" on him. When officers pulled Jimenez from the bushes, Briana yelled, "That's him."

The officers searched unsuccessfully for Briana's cell phone. While the officers were at the KFC parking lot, Briana went to the location where she had been assaulted to look for her key card to her hotel room. At trial, Briana could not specifically recall but believed she had been unable to locate the key card. She did, however, find her cell phone in the dirt. When she returned to her hotel room, Briana saw that she had two black eyes, a lump on her forehead, and her face was swollen and bloody.

During the incident, Briana noticed that Jimenez had gold "outlines" around his front teeth. One of the officers who extracted Jimenez from the bushes also noticed that Jimenez had a gold outline around one of his front teeth.

District Attorney Investigator David Medina spoke with Briana on June 24, 2013. Briana told him that she initially believed Jimenez had taken her cell phone, but she later found her cell phone and key card near where she had been attacked. Medina again spoke with Briana on July 15, 2013, at which time she told Medina that Jimenez had propositioned her for a sexual act and they had negotiated over the price. Briana also told Medina that when Jimenez opened his wallet, she saw a picture of a Hispanic female with curly hair wearing a white sweater.

On July 16, 2013, Medina had a correctional officer remove Jimenez's wallet from a property bag and Medina photographed the contents. When Median unfolded the wallet, he saw a photograph that was consistent with the one described by Briana. After Medina photographed the wallet and its contents, the correctional officer placed the items back into the property bag and sealed it.

4.

Blood was found on the white undershirt and gray shirt Jimenez was wearing when arrested.

Jimenez was charged with second degree robbery (count 1), assault by means of force likely to produce great bodily injury (count 2), and assault with intent to commit rape (count 3). Jimenez pled not guilty. On August 20, 2013, a jury found Jimenez guilty as charged on all three counts.

The trial court sentenced Jimenez to four years in state prison for the assault with intent to commit rape conviction, and a three-year term was imposed for each of the other two convictions, with the terms to run concurrently to the term imposed on count 3.

## DISCUSSION

Jimenez raises three issues in this appeal. First, he contends the prosecutor committed misconduct in closing argument. Second, Jimenez asserts the term imposed for count 2 should be stayed pursuant to section 654. Lastly, Jimenez maintains the abstract of judgment incorrectly describes the count 2 offense and should be corrected.

## I.      No Prosecutorial Misconduct

Jimenez contends the prosecutor committed misconduct in closing argument by commenting on his prearrest silence, thereby violating his rights to due process and a fair trial. This contention lacks merit.

### *Factual Summary*

During closing argument, the prosecutor maintained that Jimenez's act of fleeing and hiding in the bushes while the sprinklers were going reflected a consciousness of guilt. The prosecutor went on to argue that:

> "There is no reason to be in those bushes … other than the fact that the person, who he just beat up and tried to assault and put his penis in her mouth, is just feet away, and she's on the phone with 911 calling the police, and he's in a spot where if he tried to make a run for it, she's going to see him again. Now, if he was innocent and didn't do anything wrong, when the police showed up, an innocent person says, 'Thank goodness you're

5.

here. Hey, I'm over here. Can you believe what just happened. Hey, look at this. Oh, my gosh, I feel safe, now that you're here.'"

At the next recess in the proceedings, defense counsel argued that the above comments by the prosecutor amounted to error pursuant to *Griffin v. California* (1965) 380 U.S. 609, as it was a comment on Jimenez's failure to speak with police. The prosecutor responded that his remarks were not a comment on Jimenez's failure to speak with police; rather, the remarks were an observation about why Jimenez would be hiding in the bushes.

The following morning the trial court ruled that no *Griffin* error had been committed because the prosecutor had not commented on Jimenez's failure to testify or his postarrest silence. Instead, the trial court opined that the prosecutor "simply commented that an innocent person wouldn't have remained hidden when the police arrived, and this is similar to arguing flight is evidence of guilt, which clearly is permissible."

*Analysis*

Jimenez contends that the prosecutor's remarks were misconduct for two reasons: (1) the remarks referred to highly prejudicial facts not in evidence, and (2) the remarks constituted error under *Griffin* of Jimenez's right to remain silent at trial and under *Doyle v. Ohio* (1976) 426 U.S. 610 (*Doyle*) of his right to remain silent after receiving warnings pursuant to *Miranda v. Arizona* (1966) 384 U.S. 436. Jimenez contends these errors were prejudicial. There was no error and thus no prejudice.

Under federal constitutional principles, a prosecutor commits reversible error only if the conduct infects the trial with such ""unfairness as to make the resulting conviction a denial of due process."" (*People v. Davis* (2009) 46 Cal.4th 539, 612 (*Davis*).) California state law requires reversal when a prosecutor uses "'deceptive or reprehensible methods'" and ""it is reasonably probable that a result more favorable to the defendant would have been reached without the misconduct."" (*Ibid.*)

6.

*Doyle* prohibits commenting on a defendant's election to remain silent after receiving *Miranda* warnings. Under the holding of *Doyle,* postarrest silence after *Miranda* warnings may not be used to impeach a defendant's trial testimony. To do so violates a defendant's right to due process and a fair trial. (*Doyle, supra,* 426 U.S. at pp. 617-618; *People v. Collins* (2010) 49 Cal.4th 175, 203.) Here, however, the prosecutor's remarks concerned a timeframe before Jimenez had been placed under arrest and before he received *Miranda* warnings. It is not improper to comment on a defendant's prearrest and pre-*Miranda* warning silence. (*Jenkins v. Anderson* (1980) 447 U.S. 231, 238, 240-241.) Moreover, Jimenez did not testify at trial, so the prosecutor could not have been looking to impeach Jimenez's testimony. The facts simply do not support any claim of *Doyle* error.

The cases cited by Jimenez do not support his contention that the prosecution was precluded from commenting on his action of fleeing the scene, hiding from the police, and prearrest silence and lack of explanation for his conduct. This court's opinion in *People v. Free* (1982) 131 Cal.App.3d 155 made clear that a defendant can be cross-examined about flight after a shooting and the defendant's failure to contact the police. (*Id.* at p. 162.) As we stated in *Free,* "Prearrest silence may be commented upon unless the court finds the silence was an invocation of Fifth Amendment rights." (*Id.* at p. 165.) The prosecutor's remarks in Jimenez's case addressed a timeframe when Jimenez had not been arrested or issued *Miranda* warnings.

We do not view Jimenez's prearrest silence as invoking his Fifth Amendment privilege to remain silent; rather, it is evidence of consciousness of guilt, as the prosecutor argued. "[A] defendant normally does not invoke the [Fifth Amendment] privilege by remaining silent." (*Salinas v. Texas* (2013) 570 U.S. ___ [133 S.Ct. 2174, 2181].) In *Salinas,* the defendant had been questioned by police; he was not in custody; and he had not been issued *Miranda* warnings. (*Salinas,* at p. ___ [133 S.Ct. at p. 2178].) The defendant answered some questions, but not others, and defendant did not testify at

trial. The prosecution used the defendant's silence in response to some questions as evidence of guilt. (*Id.* at pp. ___, ___ [133 S.Ct. at pp. 2178-2179].) The United States Supreme Court affirmed, holding that the defendant must expressly invoke the Fifth Amendment privilege in order to claim it; silence is not sufficient. (*Salinas*, at pp. ___, ___ [133 S.Ct. at pp. 2178, 2183].)

The case of *People v. Waldie* (2009) 173 Cal.App.4th 358 also does not support Jimenez's position. In *Waldie,* police made repeated phone calls to a suspect, asking the suspect to call them back regarding an investigation of child molestation charges. The defendant refused to return the phone calls and to speak to the police, which the prosecutor argued was evidence of consciousness of guilt. (*Id.* at p. 366.) The appellate court in *Waldie* held that police could not repeatedly call a suspect and then comment on the suspect's unwillingness to cooperate with them, as this infringed on the protection against self-incrimination. (*Ibid.*) Here, the police were not making multiple attempts to speak to Jimenez about the offenses, and Jimenez's prearrest and pre-*Miranda* silence cannot reasonably be viewed as an invocation of the right to remain silent, as could the defendant's actions in *Waldie*.

The facts also do not support any claim of *Griffin* error. *Griffin* "prohibits any comment on a defendant's failure to testify at trial that invites or allows the jury to infer guilt therefrom, whether in the form of an instruction by the court or a remark by the prosecution." (*People v. Clair* (1992) 2 Cal.4th 629, 662.) In *People v. Sanchez* (2014) 228 Cal.App.4th 1517, a prosecutor commented that "'If the defense had a plausible, reasonable explanation why the defendant was in the yard that morning, they would have given it. They haven't.'" The appellate court held this remark did not constitute *Griffin* error. (*Sanchez,* at p. 1525.) Although Jimenez did not testify at trial, the prosecutor's comments in closing argument could not reasonably be construed as commenting on a failure to testify. The prosecutor's remarks were directed at Jimenez's prearrest actions, including his prearrest silence.

8.

As for Jimenez's contention that the comments constituted highly prejudicial facts not in evidence, this contention is specious. The prosecutor did not refer to any facts relating to the offenses that were not in evidence; the remarks constituted comment on the evidence. A prosecutor is given wide latitude to comment on the evidence, "'which can include reasonable inferences, or deductions to be drawn therefrom. [Citations.] It is also clear that counsel during summation may state matters not in evidence, but which are common knowledge or are illustrations drawn from common experience, history or literature.'" (*People v. Wharton* (1991) 53 Cal.3d 522, 567.)

"'[T]he protective shield of the Fifth Amendment should [not] be converted into a sword that cuts back on the area of legitimate comment by the prosecutor on the weaknesses in the defense case.'" (*United States v. Robinson* (1988) 485 U.S. 25, 32.) Here, the prosecutor's remarks constituted fair comment on the evidence, not *Doyle* or *Griffin* error. There was no prosecutorial misconduct. (*Davis, supra,* 46 Cal.4th at p. 612.)

## II.    Section 654 Does Not Apply

Jimenez's second contention is that section 654 precludes imposition of punishment for both the counts 2 and 3 offenses. He is mistaken.

Jimenez was convicted of the count 2 offense, assault by means of force likely to produce great bodily injury, and count 3, assault with intent to commit rape. The trial court sentenced Jimenez to four years in state prison for the count 3 offense and imposed a concurrent term of three years for the count 2 offense.

Under section 654, a trial court may sentence a defendant for only one offense based on the "same act or omission," even where that act or omission results in multiple convictions. (§ 654, subd. (a).) If the evidence establishes a defendant entertained multiple criminal objectives that were independent of and not merely incidental to each other, a trial court may impose punishment for acts committed in pursuit of each

9.

objective, even though the acts may be part of an otherwise indivisible course of conduct. (*People v. Liu* (1996) 46 Cal.App.4th 1119, 1135 (*Lui*).)

Whether section 654 applies in a given case is a factual determination for the trial court and its findings must be upheld on appeal if there is any substantial evidence to support them. (*People v. Jones* (2002) 103 Cal.App.4th 1139, 1143 (*Jones*).) In conducting our review, we view the evidence in the light most favorable to the trial court's findings and presume the existence of every fact the trier of fact reasonably could deduce from the evidence. (*Ibid.*) The trial court's findings may be express or implied. (*People v. McCoy* (1992) 9 Cal.App.4th 1578, 1585.)

The crime of assault with intent to commit rape is complete when the perpetrator intends to rape the victim and intends to use force to overcome the victim's resistance. (*People v. Green* (1960) 180 Cal.App.2d 537, 542-543.) Here, Jimenez did not just intend to use force; he actually used physical force in his attempt to rape Briana. He "socked" her in the left cheek, got on top of her, and began hitting her face with his fists. Jimenez then pulled down his pants, withdrew his penis, and attempted to force his penis into Briana's mouth. When Jimenez moved to one side and off of Briana, she started to get up. The reasonable inference is that at the point Jimenez moved off of Briana, he had ceased to attempt to rape Briana and the crime of assault with intent to commit rape was complete.

The offense of assault by means of force likely to produce great bodily injury requires a use of force that is not required for an assault with intent to commit rape. (*People v. Aguilar* (1997) 16 Cal.4th 1023, 1038 (conc. opn. of Mosk, J.).) The evidence shows that after the assault with intent to commit rape was complete and Briana attempted to get up, Jimenez stood up and gratuitously began kicking her head and upper body. Briana estimated Jimenez kicked her in the head eight times after she was trying to stand up and get away from him after the completion of the assault with intent to commit

10.

rape.  The reasonable inference is that after abandoning his attempt to rape Briana, he violently assaulted her for having resisted and thwarted his attempt.

Substantial evidence supported the trial court's implied finding that Jimenez had a distinctly different objective when he sat on top of Briana and punched her and removed his penis from his pants than when he was standing and kicking her about the head after abandoning his attempt at rape.  (*Jones, supra,* 103 Cal.App.4th at p. 1143.)  Consequently, section 654 does not preclude imposition of a term of punishment for each offense.  (*Liu, supra,* 46 Cal.App.4th at p. 1135.)

As for Jimenez's assertion in a footnote of his opening brief that this court should find the intent for the counts 1 and 2 offenses were the same if we conclude the intent for the counts 2 and 3 offenses differ, we decline to address this contention on its merits.  If a party's brief does not provide reasoned legal argument and citation to authority on each point raised, "'the court may treat it as waived, and pass it without consideration.'" (*People v. Stanley* (1995) 10 Cal.4th 764, 793.)  Here, Jimenez has provided no reasoned argument or citation to authority for his contention that the intent for the counts 1 and 2 offenses were identical; thus, the issue is waived.

### III.    Abstract of Judgment

Jimenez's last contention in this appeal is that the abstract of judgment contains a clerical error in that it incorrectly describes the count 2 offense for which he was convicted.  The People concede the issue.

In count 2, Jimenez was convicted of violating section 245, subdivision (a)(4), assault by means of force likely to produce great bodily injury.  The abstract of judgment states the correct code section and subdivision, but incorrectly describes the offense as assault with great bodily injury.

This court has the inherent power to correct clerical errors in an abstract of judgment.  (*People v. Mitchell* (2001) 26 Cal.4th 181, 185.)  We will direct that the abstract of judgment be corrected to accurately reflect the section 245, subdivision (a)(4)

11.

offense as assault by means of force likely to produce great bodily injury, not assault with great bodily injury.

## DISPOSITION

The abstract of judgment is ordered corrected to reflect the count 2 offense as assault by means of force likely to produce great bodily injury. A copy of the corrected abstract of judgment shall be forwarded to the appropriate authorities. In all other respects, the judgment is affirmed.